907 A.2d 1061

Patricia QUINBY, Executrix of the Estate
of John Quinby, Deceased

v.

PLUMSTEADVILLE FAMILY PRACTICE, INC., d/b/a
Plumsteadville Family Practice, and Charles
Burmeister, M.D., and Millie Welsh, R.N.

Appeal of Millie Welsh, R.N.

Patricia Quinby, Executrix of the Estate
of John Quinby, Deceased

v.

Plumsteadville Family Practice, Inc., d/b/a Plumsteadville
Family Practice, and Charles Burmeister, M.D., and
Millie Welsh, R.N.

Appeal of Charles Burmeister, M.D.

Supreme Court of Pennsylvania.

Argued May 18, 2005.

Resubmitted Sept. 28, 2006.

Decided Oct. 18, 2006.

184

James Michael Doyle, Esq., Post & Schell, P.C., Sheila Ann Haren, Esq., Post & Schell, P.C., Philadelphia, for Millie Welsh.

Eric G. Zajac, Esq., The Zajac Law Firm, L.L.C., Philadelphia, for Patricia Quinby.

William H. Pugh, IV, Esq., Kane, Pugh, Knoell, Troy & Kramer, L.L.P., Norristown, for Plumsteadville Family Practice, Inc., (d/b/a "Plumsteadville Family Practice").

James P. Kilcoyne, Esq., Kilcoyne & Associates, L.L.C., John Joseph Leo, III, Esq., Kilcoyne & Nesbitt, L.L.C., for Charles Burmeister, M.D.

James P. Kilcoyne, Esq., Kilcoyne & Associates, L.L.C., John Joseph Leo, III, Esq., Kilcoyne & Nesbitt, L.L.C., for Charles Burmeister, M.D.

James Michael Doyle, Esq., Sheila Ann Haren, Esq., Post & Schell, P.C., Philadelphia, for Millie Welsh.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice BAER.

John Quinby (Decedent), a quadriplegic, suffered injures, which allegedly eventually resulted in his death, when he fell from an examination table while unattended after a minor operative procedure performed by Dr. Charles Burmeister, assisted by Millie Welsh (Nurse Welsh), in the offices of Plumsteadville Family Practice.[1] In the subsequent medical malpractice action filed by his widow and executrix, Patricia Quinby (Quinby), on behalf of his estate, the jury returned a defense verdict.[2] The Superior Court directed the grant of judgment notwithstanding the verdict (judgment n.o.v.) in Quinby's favor on liability only, and remanded for a new trial on damages.

This Court granted a general allowance of appeal principally to decide whether the trial court should have permitted invocation of the doctrine of *res ipsa loquitur* to assist Quinby in meeting her burden of proof, and whether the Superior Court erred in granting judgment n.o.v. in Quinby's favor regarding liability. The general grant of allocatur also encompassed evidentiary questions regarding admission of videotapes of Decedent.

We agree with the Superior Court that the trial court should have permitted the *res ipsa loquitur* inference of negligence under the facts of this case. We also agree that

1. Plumsteadville Family Practice, Dr. Burmeister, and Nurse Welsh are referred to collectively as Defendants.

2. At the time this litigation was commenced, Decedent was alive; however, he died prior to trial. Initially, both Decedent and Quinby were the named plaintiffs in this action. After Decedent's death, his name was removed from the caption and replaced with Quinby's, as the representative of Decedent's estate.

the plaintiff, Quinby, is entitled to judgment n.o.v. on liability for negligence. We also conclude, however, that, contrary to the Superior Court's conclusion, a factual issue remains regarding whether Defendants' negligence caused Decedent's death within the meaning of the Wrongful Death Act, 42 Pa.C.S. § 8301. Finally, we find that, to the extent it is relevant to damages, the videotape evidence proffered by Quinby and partially disallowed by the trial court and then wholly permitted by the Superior Court, should be admitted into evidence. Accordingly, for the reasons that follow, the order of the Superior Court is affirmed in part and reversed in part, and the case is remanded for a new trial on the wrongful death count and for damages for the survival action based on negligence.

## Facts and Procedural History

The parties agree that on November 8, 1996, Decedent had a small lesion removed from his head by Dr. Burmeister, assisted by Nurse Welsh, at the office of the Plumsteadville Family Practice.[3] In preparation for the procedure, Quinby, Decedent's wife, transferred Decedent from his wheelchair onto an examination table without side rails or restraints. Once she moved Decedent, Quinby left the examination room.

According to Decedent, in a deposition taken before his death, Dr. Burmeister and Nurse Welsh positioned him on the examination table on his right side with a pillow behind his back, under his head and between his knees. Dr. Burmeister then removed the lesion from Decedent's left temple, and, in due course, exited the room. Nurse Welsh also left the room, leaving the door open. Both Dr. Burmeister and Nurse Welsh returned on occasion to check on Decedent; however, at some point, while unattended, Decedent fell from the examination table to the floor, undisputedly suffering injury.[4] Decedent

3. Decedent had been Dr. Burmeister's patient for over twenty-five years and a quadriplegic for nineteen years.

4. It is undisputed that, at the least, Decedent suffered a broken left femur, which is the thigh bone running from the hip to the knee, facial lacerations and contusions from the fall. Quinby further asserts that Decedent suffered spinal and cervical injuries, which ultimately led to

testified that he did not know exactly how or why he fell, but that after being left lying on his right side, he felt his body roll to the right and fall to the floor. After hearing the loud noise that resulted from the fall, Nurse Welsh, Dr. Burmeister and other employees discovered Decedent on the floor and helped place him back on the examination table.

Defendants' testified, contrary to Decedent, that from the start of the operation Decedent was placed on his back in the center of the examination table. Following the operation, they claimed Decedent was left in this position and that they then left the room and continued to check on Decedent until they heard a thud and rushed into the room to find him on the floor.[5] All agree that Defendants and other employees of the Doctor Burmeister placed Decedent back onto the examination table and rendered prompt care.

Quinby filed a complaint around January 5, 1998 in the Bucks County Court of Common Pleas alleging that Defendants committed professional negligence in their care of Decedent. Quinby alleged that Dr. Burmeister negligently provided medical care to Decedent by failing to position Decedent properly on the examination table, failing to use side rails or another restraining system on the examination table, failing to assess Decedent's fall risk, failing to monitor Decedent subsequent to the operative procedure, failing to supervise Nurse Welsh by instructing her to not leave the Decedent, and generally failing to adopt and enforce rules for the safety of patients left on examination tables. Quinby alleged separately that Nurse Welsh was negligent in providing nursing care by failing to position Decedent properly on the examination table, failing to restrain Decedent, failing to assess Decedent's fall risk after the operative procedure, and leaving Decedent unattended. Quinby also brought counts against Defendants for negligent infliction of emotional distress, loss of consor-

progressive pulmonary failure and his death. Defendants dispute the spine and cervical injuries to some extent, and vigorously take issue with the contention that Decedent's death was the result of the fall.

5. As will be discussed further herein, Defendants' theory of the case provides no explanation for how Decedent got from the flat of his back, centered on the examination table, to the floor.

tium, and failure to obtain informed consent.[6] After Quinby filed the complaint, Decedent died, allegedly from complications arising from the fall, and the parties filed a stipulation to amend the complaint to include a count for wrongful death and reflect the parties' understanding that the complaint transmuted to a survival action upon Decedent's death. Prior to his death, Decedent testified in a pre-trial discovery deposition and in a *de bene esse* deposition.[7]

A jury trial was held from January 28, 2003 to February 5, 2003.[8] At trial, Quinby presented her case consistent with Decedent's belief that Dr. Burmeister and Nurse Welsh had positioned him on his right side prior to the operative procedure, and left him there until he fell. Quinby called as her expert Bradley Fenton, M.D. Dr. Fenton opined that Defendants had not complied with the standard of care, which required them to ensure that Decedent was left safely and securely on the examination table at all times. Further, Dr. Fenton stated that he was unaware of how, absent extrinsic forces not present in this situation, a quadriplegic could fall from an examination table without there being a breach of the requisite standard of care.[9] In any event, Dr. Fenton testified that someone should have stayed in the room with Decedent or he should have been secured to the examination table with side rails or straps. Dr. Fenton concluded that Defendants failed to provide Decedent with a safe environment for the entire time he was in the office. Although Dr. Fenton formed this opinion and wrote his report prior to reviewing Defen-

6. The failure to obtain informed consent count was stricken by order of the court on May 6, 1998.

7. A *de bene esse* deposition is taken when the witness will likely be unable to attend a scheduled court hearing. BRYAN A. GARDNER, A DICTIONARY OF MODERN LEGAL USAGE 250 (2d ed.1995).

8. A directed verdict was entered for Plumsteadville with respect to Quinby's claim for corporate negligence. Accordingly, the only remaining theory of liability against Plumsteadville was for vicarious liability as it pertained to the care and treatment rendered by Dr. Burmeister and Nurse Welsh, as agents of Plumsteadville.

9. Decedent had no use of his lower limbs or his trunk, no use of his right upper limb, and only a very slight range of motion in his left upper extremity.

dants' deposition testimony that they left Decedent on his back, he stated that upon reviewing these depositions, he concluded that they offered nothing to change his opinion or conclusion that someone should have remained in the room with Decedent, or that he should have been placed on a table with rails or straps.

Defendants presented the expert testimony of Joseph Bender, M.D., who asserted that leaving a quadriplegic lying in the center of the examination table would be safe, and there was simply no reason for Dr. Burmeister to expect, given the circumstances and Decedent's past medical history of twenty-five years with no falls in the office, that Decedent would be able to move himself on the table.[10] Dr. Bender did testify that notwithstanding a quadriplegic's general inability to move, some quadriplegic's do occasionally have muscle spasms. However, Dr. Bender also testified that he was unaware of any spasm strong enough to throw Decedent's motionless body off the table and onto the floor. Dr. Burmeister in this regard testified that he cared for Decedent since the accident rendering him a quadriplegic nineteen years before, and was unaware that Decedent had ever had muscle spasms.[11]

During trial, the parties also introduced evidence regarding whether the injuries Decedent sustained as a result of the fall eventually caused his death. Additionally, Quinby sought to introduce the audio portion of a videotape Decedent had made twenty-two months prior to his fall describing his life and interactions with family and friends as a quadriplegic, which Decedent had intended for use as an educational tool for

10. There is indeed no evidence that Decedent was capable of or did move himself on the examination table. Moreover, Dr. Bender failed to explain how this accident could have occurred if, as Defendant's claimed, Decedent was positioned on his back in the center of the examination table. Absent such explanation, however, Dr. Bender's testimony adds little to the case in terms of creating a factual dispute over how Decedent actually fell from the examination table to the floor.

11. We note that Quinby's expert Dr. Fenton agreed that quadriplegics could have muscle spasms and if Decedent was on his side this could explain how he fell. Dr. Fenton noted that such explanation would be consistent with his finding of negligence as side rails or straps would have prevented the fall.

students. Quinby offered that the audio track would allow the jury to hear the strength and character of Decedent's voice and thereby his condition prior to the accident. Quinby also sought to introduce the videotape of Decedent's *de bene esse* deposition, taken the day before he died, which would have permitted contrast of his condition before and after the accident. Upon Defendants' objections, the trial court refused to permit admission of the audio portion of the video taken of Decedent prior to the accident depicting his life as a quadriplegic because the trial court believed that a demonstration of Decedent's strength prior to the fall was irrelevant to "the ultimate issue." [12] Moreover, the trial court refused to permit the showing of the *de bene esse* video tape, but, instead, allowed a transcript of the deposition to be read into the record.

At the close of the case, Quinby requested that the trial court instruct the jury on *res ipsa loquitur*.[13] The trial court declined to do so because it found that Quinby failed to establish either that Decedent's fall from the examination table was of the kind that usually does not occur in the absence of negligence, or that other causes, such as Decedent's conduct, were eliminated by the evidence. The jury, without being charged on *res ipsa loquitur*, returned a verdict in favor of Defendants, finding that Dr. Burmeister and Nurse Welsh were not negligent. On February 18, 2003, Quinby

12. We find this ruling baffling, and are perplexed with what the trial court termed "the ultimate issue." As will be further discussed herein, the evidence was clearly relevant to damages and should not have been disallowed on relevancy grounds.

13. As will be discussed more fully herein, the doctrine of *res ipsa loquitur* allows the fact-finder to infer that the harm suffered was caused by the negligence of the defendant in certain circumstances. *Hightower-Warren v. Silk*, 548 Pa. 459, 698 A.2d 52 (1997). According to the Restatement (Second) of Torts § 328D, the inference is permitted if:

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

filed a post-trial motion for judgment n.o.v. or a new trial pursuant to Pa.R.C.P. 227.1, which the trial court denied. Judgment was entered for Defendants and Quinby appealed.

On appeal, Quinby first asserted that the trial court erred in failing to charge the jury on *res ipsa loquitur* because the circumstances were such that Quinby was entitled to an inference of negligence. The Superior Court agreed, concluding that the indicated negligence was within the scope of Doctor Burmeister and Nurse Welsh's duty when caring for a quadriplegic. *See Quinby v. Burmeister, M.D. et al.,* 850 A.2d 667, 669 (Pa.Super.2004). In this regard, the court concluded that a quadriplegic could not normally fall from an examination table absent negligence; and that, in this case, other causes for the fall were eliminated.

Second, premised upon the conclusion that an inference of negligence, pursuant to *res ipsa loquitor,* was warranted, Quinby argued that the trial court erred in failing to grant judgment n.o.v. on the issue of liability against Defendants, because the evidence was such that no two reasonable minds could disagree that Defendants were negligent. *See Cummings v. Nazareth Borough,* 427 Pa. 14, 233 A.2d 874 (1967). Again, the Superior Court agreed. Accordingly, it reversed the trial court's decision on liability granting Quinby judgment n.o.v., and remanded the case for a new trial on damages.

Finally, the Superior Court agreed with Quinby's challenges to the trial court's ruling on the admissibility of the videotapes, finding that the jury was entitled to listen to the audio portion of the videotape Decedent made twenty-two months before the fall to permit the jury to see the pace and extent of Decedent's decline after the fall. Further, the Superior Court held that the trial court erred in denying admissibility of Decedent's *de bene esse* deposition taken the day before he died, which, in the Superior Court's view, would have permitted the jury to see, as well as hear, Decedent testify on his own behalf.

Upon Dr. Burmeister's and Nurse Welsh's request for review of the Superior Court's decision, we granted allocatur

to determine whether Quinby was entitled to the inference created by the *res ipsa loquitur* doctrine, whether the Superior Court erred in finding that judgment n.o.v. was warranted, and whether the evidentiary rulings regarding the videotapes were proper.

## I. *Res ipsa loquitur*

The first issue we must examine involves the propriety of the Superior Court's determination that the circumstances here were such that Quinby was entitled to a charge regarding the doctrine of *res ipsa loquitur.* In examining jury instructions, our scope of review is limited to determining whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. *Stewart v. Motts,* 539 Pa. 596, 654 A.2d 535, 540 (1995). Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. *Id.* (citing *Glider v. Commonwealth Dept. of Hwys.,* 435 Pa. 140, 255 A.2d 542, 547 (1969)); *see also Price v. Guy,* 558 Pa. 42, 735 A.2d 668, 670–71 (1999) ("[E]rror will be found where the jury was probably mislead by what the trial judge charged or where there was an omission in the charge."). A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to a fundamental error." *Stewart,* 654 A.2d at 540 (quoting *Voitasefski v. Pittsburgh Rys. Co.,* 363 Pa. 220, 69 A.2d 370, 373 (1949).) In reviewing a trial court's charge to the jury we must look to the charge in its entirety. *Stewart,* 654 A.2d at 540. Because this is a question of law, this Court's review is plenary. *Naylor v. Township of Hellam,* 565 Pa. 397, 773 A.2d 770, 773 (2001).

Defendants argue that an instruction on *res ipsa loquitur* was not warranted on the facts of this case because Quinby did not demonstrate that quadriplegics do not fall off of examination tables in the absence of negligence, or that other responsible causes, such as Decedent's own actions, were sufficiently

ruled out. Defendants also argue that, pursuant to *Toogood v. Rogal et al.*, 573 Pa. 245, 824 A.2d 1140 (2003) (plurality),[14] three conditions must be met before a *res ipsa loquitur* charge is warranted in a medical malpractice case, and Quinby failed to meet two of the three conditions. Specifically, relying on *Toogood*, 824 A.2d at 1150, notwithstanding its non-precedential status, Defendants argue that *res ipsa loquitur* applies in the medical malpractice arena only if the agent or instrumentality causing the harm was within their exclusive control and there is no direct evidence of negligence.

In response, Quinby contends that *res ipsa loquitur* is applicable to the facts of this case as developed at trial pursuant to both § 328D of the Restatement (Second) of Torts and the opinion announcing the judgment of the Court in *Toogood*, and, therefore, the requested charge on *res ipsa loquitur* was appropriate. We agree with Quinby that the evidence presented at trial satisfies the three elements of § 328D, thus entitling her to an inference of negligence pursuant to *res ipsa loquitor*. Further, for the reasons discussed herein, we do not find it necessary to analyze this case pursuant to our prior plurality decision in *Toogood*. Accordingly, we conclude that the Superior Court properly held that the trial court erred in refusing the *res ipsa loquitur* charge, which would have permitted the drawing of an inference of Defendants' negligence.

Medical malpractice consists of a negligent or unskillful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act. *Mutual Ben. Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743 (1999); *Hodgson v. Bigelow*,

14. Of the six justices deciding the case, three joined the opinion announcing the judgment of the Court, two concurred in the result only, and one dissented. As a plurality opinion, *Toogood* is not binding precedent. *Commonwealth v. Sepulveda*, 579 Pa. 217, 855 A.2d 783, 791 n. 12 (2004); *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 903 (1996); *Commonwealth v. Mason*, 456 Pa. 602, 322 A.2d 357 (1974). Nevertheless, we will discuss its relevance to the instant case briefly.

335 Pa. 497, 7 A.2d 338, 342 (1939). Because medical malpractice is a form of negligence, to state a *prima facie* cause of action, a plaintiff must demonstrate the elements of negligence: "a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm." *Hightower–Warren v. Silk*, 548 Pa. 459, 698 A.2d 52, 54 (1997). With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation. *Id.*

*Res ipsa loquitur* allows juries to infer negligence from the circumstances surrounding the injury.[15] *Res ipsa loquitur*, meaning literally "the thing speaks for itself," is "a shorthand expression for circumstantial proof of negligence—a rule of evidence." *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94, 99 (1974).[16] It is a rule that provides that a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence. WILLIAM L. PROSSER, LAW OF TORTS §§ 39, 40 (4th ed.1971) (calling *res ipsa loquitur* a

**15.** Upon close analysis, it is apparent that *res ipsa loquitur* provides no assistance to a plaintiff's obligation to demonstrate a defendant's duty, that a breach of that duty was a substantial factor in causing plaintiff harm, or that such harm resulted in actual damages. However, *res ipsa loquitur* does aid a plaintiff in proving a breach of duty. While *res ipsa loquitur* is useful in this limited regard, case law universally refers to *res ipsa loquitur* as raising an inference of "negligence" rather than an inference of "breach of duty." Accordingly, we will abide by this typical nomenclature and refer to *res ipsa loquitur* as "raising an inference of negligence."

**16.** The doctrine of *res ipsa loquitur* originated in the case of *Byrne v. Boadle*, 2 H. & C. 722, 159 Eng.Rep. 299 (Ex. 1863), in which a barrel of flour fell from the second story of defendant's warehouse, striking a pedestrian passing below. *Gilbert*, 327 A.2d at 96. Despite his inability to show how or why the barrel fell out of the window, plaintiff was permitted to recover upon a showing that the defendant was in possession of the warehouse. *Id.* In its origin, therefore, *res ipsa loquitur* was a "commonsense appraisal of the probative force of circumstantial evidence." *Id.*.

"simple matter of circumstantial evidence"). As noted, the Restatement (Second) of Torts § 328D formulates the evidentiary theory of *res ipsa loquitur* as follows:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
>> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>>
>> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>>
>> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
>
> (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
>
> (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

REST. (SECOND) TORTS § 328D. *See also Gilbert*, 457 Pa. 602, 327 A.2d 94 (adopting *res ipsa loquitur* as defined in the Restatement (Second) of Torts § 328D). By adopting § 328D, we rejected earlier doctrines that had combined substantive and procedural concerns with the evidentiary question of the propriety of inferring negligence from particular circumstances. *Jones v. Harrisburg Polyclinic Hospital*, 496 Pa. 465, 437 A.2d 1134, 1137 (1981); *Gilbert*, 327 A.2d at 98.[17]

We first permitted use of *res ipsa loquitur* to allow recovery in medical malpractice cases in *Jones*, where we held that § 328D was fashioned to reach all instances where negligence

---

**17.** Our prior jurisprudence had developed three related theories: *res ipsa loquitur*, exclusive control, and an untitled circumstantial evidence theory. *Gilbert*, 327 A.2d at 99. In *Gilbert*, we found that "the coexistence of these three means of circumstantially proving negligence and causation obscured 'a simple matter of circumstantial evidence' commonly known elsewhere as *res ipsa loquitur*." *Id.* at 98–99 (internal citations omitted). In abandoning these three theories in favor of § 328D, we noted that the evidentiary rule enunciated in the Restatement is a "far more realistic, logical, and orderly approach to circumstantial proof of negligence than the multiple doctrines formerly employed in Pennsylvania." *Id.* at 100.

may properly be inferred and its applicability is not necessarily precluded because the negligence is related to a medical problem. *Id.* at 1138. Accordingly, we held that when common knowledge or medical evidence can be established that the event would not ordinarily occur without negligence, there is no basis for refusing to draw an inference of negligence in accord with *res ipsa loquitur. Id.; see also Hightower–Warren,* 698 A.2d at 54 n. 1.

We turn, then, to the instant case. As previously noted, § 328D provides that "it may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when" three elements are established. REST. (SECOND) TORTS § 328D(1). The third element, that "the indicated negligence is within the scope of the defendant's duty to the plaintiff," is clearly met, and Defendants do not argue otherwise. REST. (SECOND) TORTS § 328D(1)(c). Decedent, a quadriplegic, was left in Defendants' care at the time of the accident, and they were solely responsible for his safety while he was on the examination table. Thus, we will proceed to analyze the first two elements, to determine if a *res ipsa loquitur* inference is proper under the circumstances of this case.

The first element of § 328D requires that "the event is of a kind which ordinarily does not occur in the absence of negligence." REST. (SECOND) TORTS § 328D(1)(a). The "event" we must consider pursuant to the first element of § 328D is Decedent's fall from the examination table. As already stated, Decedent was a quadriplegic incapable of moving his lower limbs, trunk, and right upper limb, and with only very slight use of his upper left limb. It is undisputed that to allow for the removal of a lesion on his left temple, Decedent was positioned on the examination table. After successful completion of the surgery, according to Decedent, he was left on his right side, and, according to Defendants, he was left on his back and centered on the table. It is undisputed that Decedent was never protected by side rails or restrained with straps, and that, somehow, Decedent fell from the table to the floor.

Under these facts, there can be no question that when Defendants placed Decedent on the examination table, they had to do so in a manner insuring that he could not fall. Regardless of which version of the event is believed, there is no factual issue or possible dispute that Decedent's fall resulted from something other than Defendants' negligence. Simply put, in the absence of negligence, a quadriplegic patient such as Decedent could not fall off an examination table. Therefore, we find that the evidence satisfies the first element of § 328D.

We must next determine whether "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence." REST. (SECOND) TORTS § 328D(1)(B).[18] Under the teachings of *Gilbert* and *Jones,* the critical inquiry as to whether this subsection of § 328D is satisfied is whether a particular defendant is the responsible cause of the injury. *Jones,* 437 A.2d at 1139; *Gilbert,* 327 A.2d at 101.

 It is undisputed that there is no explanation for Decedent's fall beyond Defendants' negligence. No one else entered the examination room; the table did not break; nothing fell on or near it; there was no seismic disturbance in the area, etc. Given Decedent's full-body paralysis, all agree that there was no way he could have been responsible for his fall. Indeed, his condition made it impossible for him to even understand how or why he fell. Thus, Quinby has established that the fall is not the type of event that occurs in the absence of negligence, and that there is no explanation other than Defendants' negligence for the fall. Accordingly, § 328D's three elements were met herein, and the Superior Court was correct in ruling that the trial court should have charged the jury on the doctrine of *res ipsa loquitur.*

We turn next to Defendants' assertion that *Toogood* would alter this result. As noted, however, *Toogood* was a plurality

**18.** This element of the Restatement and our adoption of the Restatement test specifically disavows the prior requirement for *res ipsa loquitur* in Pennsylvania law that the instrumentality be in the defendant's exclusive control. *Gilbert,* 327 A.2d at 101.

opinion and therefore is not binding precedent. *Commonwealth v. Sepulveda*, 579 Pa. 217, 855 A.2d 783, 791 n. 12 (2004); *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 903 (1996); *Commonwealth v. Mason*, 456 Pa. 602, 322 A.2d 357 (1974).[19] In any event, *Toogood* concerned whether the doctrine of *res ipsa loquitur* could relieve a plaintiff of the burden of producing expert testimony to demonstrate negligence in a case that was medically complex, involving the injection of a paravertebral nerve block that resulted in a pneumothorax. *Toogood*, 824 A.2d at 1150. Because this procedure involved "professional treatment at a professional level," *id.*, involving "complex issues of anatomy, medical science, invasive procedures, and precision performance," the lead opinion held that it was essential to the plaintiff's case to introduce expert testimony. *Id.* Therefore, the *Toogood* plurality held that in a medically complex case, the determination of whether, absent negligence, the injection of a paravertebral nerve block could result in a pneumothorax, was beyond lay knowledge, and, accordingly, plaintiff could not dispense with the requirement of producing expert testimony on the elements of negligence by relying on *res ipsa loquitur.*

Here, in contrast, it cannot be said that such legitimate concerns attach because the procedure of removing a lesion is unrelated to the asserted negligence, which involves the Defendants' positioning and securing of Decedent, a quadriplegic, on an examination table, a non-complex medical scenario. Moreover, Quinby did present expert testimony, and thus carried her burden in this regard. Therefore, *Toogood*, simply does not pertain to the analysis of Quinby's assertions of *res ipsa loquitur.*

## II. Judgment N.O.V.

Having decided that the Superior Court properly held that the trial court erred in not informing the jury that they were entitled to infer negligence pursuant to *res ipsa loquitur,* we must now decide whether the Superior Court erred in grant-

19. Of the six justices deciding the case, three joined the opinion announcing the judgment of the Court, two concurred in the result only, and one dissented.

ing Quinby judgment n.o.v. on the issues of liability for negligence and wrongful death. For the following reasons, we conclude that the Superior Court properly granted judgment n.o.v. on the negligence issue, because we find that no two reasonable minds could disagree that the outcome should have been rendered in favor of Quinby. We also conclude, however, that factual issues remain regarding whether the fall caused Decedent's death, and, thus, the Superior Court erred in directing verdict on the wrongful death count.

There are two bases upon which a court may enter a judgment n.o.v.:(1) the movant is entitled to judgment as a matter of law, *Moure v. Raeuchle,* 529 Pa. 394, 604 A.2d 1003, 1007 (1992) (quoting *Tremaine v. H. K. Mulford Co.,* 317 Pa. 97, 176 A. 212 (1935)), or (2), the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant, *id.* (quoting *Cummings v. Nazareth Borough,* 427 Pa. 14, 233 A.2d 874 (1967)). With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in their favor; whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure. *Id.* The Superior Court *sub judice,* in granting judgment n.o.v., followed the second basis, and concluded that the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of Quinby. *Quinby,* 850 A.2d 667.

We have held that in reviewing a motion for judgment n.o.v., "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Moure,* 604 A.2d at 1007 (quoting *Broxie v. Household Finance Company,* 472 Pa. 373, 372 A.2d 741, 745 (1977)). Moreover, a court should only enter a judgment n.o.v. in a clear case and must resolve any doubts in favor of the verdict

winner. *See id.* at 1007; *see also Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 414 A.2d 100 (1980); *Stewart v. Chernicky,* 439 Pa. 43, 266 A.2d 259 (1970). A lower court's grant or denial of a judgment n.o.v. will be disturbed only for an abuse of discretion or an error of law. *See Adamski v. Miller,* 545 Pa. 316, 681 A.2d 171, 173 (1996). In examining this determination, our scope of review is plenary, as it is with any review of questions of law. *See Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

In granting Quinby judgment n.o.v., the Superior Court reviewed the evidence and found that it would have been impossible for Decedent to roll off the table if he had been positioned on his back as Defendants claimed. Although there was testimony that quadriplegics occasionally have muscle spasms, the Superior Court found that there was no testimony or evidence that the spasms could have caused a quadriplegic patient lying on his back in the center of an examination table to be thrown from the table. *Id.* The Superior Court noted that Quinby's expert testified that in some cases a healthy person may fall off a table without negligence, but found this testimony irrelevant to whether a quadriplegic could fall off a table without negligence. *Id.* Even if there were a likely risk that a muscle spasm could cause a patient to fall off a table, the Superior Court reasoned that Defendants should not have left Decedent alone without side rails and unrestrained. Following this analysis, the Superior Court reversed the trial court's denial of judgment n.o.v., and remanded the case to the trial court for a new trial solely on the issue of damages. We will address the propriety of the Superior Court's ruling first with respect to the survival action premised on negligence, and, second, with respect to the wrongful death count.

### a. Negligence

Defendants argue that the Superior Court improperly substituted its appraisal of the evidence for that of the jury's. Defendants argue that the Superior Court improperly overlooked or ignored credible evidence establishing that Decedent's fall could have occurred in the absence of Defendants'

negligence. Quinby, of course, argues that the Superior Court's grant of judgment n.o.v. was entirely proper on the facts of this case, because all the parties agree that Decedent fell from the table, and no one could explain how Decedent could have fallen if positioned on his back as Defendants testified. Essentially, Quinby argues that it was incumbent upon Defendants to connect the dots between their allegation that Decedent was properly left on his back and their concession that he fell from the table. We agree with Quinby.

Preliminarily, it is necessary to address Defendants' specific argument and the facts on which it is based. Specifically, Nurse Welsh argues that the Superior Court's opinion was based upon the erroneous conclusion that it would have been impossible for Decedent to have rolled off of the table if he had been positioned on the center of the table on his back. Rather, Nurse Welsh asserts that Quinby's own expert, Dr. Fenton, testified that Decedent's fall could have occurred if he had an involuntary spasm. A closer look at the record, however, reveals that Nurse Welsh's interpretation of the testimony is erroneous.

Dr. Fenton's testimony was premised on Decedent's testimony that he was on his side; Dr. Fenton stated that, from this position, an involuntary muscle spasm may have caused Decedent to fall to the floor. It was Dr. Fenton's position that if this was what occurred Defendant's had breached their standard of care by not either staying in the room with Decedent or employing side-rails or restraining straps. Conversely, if Decedent was on his back as Defendants testified, Dr. Fenton stated that this would not change his conclusion that Defendants breached the duty of care and were, thus, negligent for the same reasons. Contrary to Nurse Welsh's assertion, Dr. Fenton did not testify that if Decedent was on his back, it would have been possible for a muscle spasm to move him to the floor. In fact, Defendants' own expert testified in this regard and concluded that a muscle spasm would not have been powerful enough to "actually move a body on a table."

Thus, viewing the evidence actually presented in the light most favorable to Defendants as the verdict winners, we will proceed to analyze the appropriateness of granting judgment n.o.v. for Quinby on liability. It is important to note that the above discussion regarding the applicability of *res ipsa loquitur* to the facts presented at trial is also implicated in our discussion of the propriety of judgment n.o.v. As noted, § 328D(2) provides that "It is the function of the court to determine *whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.*" (Emphasis added). Further, § 328D(3) provides that "[i]t is the function of the jury to determine whether the inference is to be drawn in any case *where different conclusions may reasonably be reached.*" (Emphasis added). Therefore, it is apparent that the Restatement contemplates that there will be circumstances such that the inference of negligence must be drawn, and in those circumstances, where there are no material facts in dispute and different conclusions may not reasonably be reached, the court may direct the jury to find for the plaintiff. We believe that this is such a case, and, pursuant to § 328D(2) and (3), the evidence demonstrates that the inference of negligence must be drawn, and different conclusions may not reasonably be reached. RESTATEMENT (SECOND) OF TORTS, § 328D CMT. L (providing that § 328D(2) and (3) are intended to "make it entirely clear that it is the function of the court to determine, in the first instance, whether the jury can reasonably draw the inference, or whether it must necessarily be drawn, and that where different conclusions may reasonably be reached it is the function of the jury to decide whether the inference is to be drawn or not.").

We recognize that *res ipsa loquitur* involves a permissible inference of negligence, not a legal presumption, and direction of a verdict for a plaintiff is not the usual outcome where it applies. The inference provides reasonable evidence, in the absence of an explanation by Defendants, that the accident arose from their negligence. The strength of the inference will necessarily depend on the evidence presented, and will range from reasonable probability to practical certain-

ty. In the ordinary case, where different conclusions may be reasonably reached, it is the function of the jury to determine whether the inference is to be drawn.

We also recognize, however, that a directed verdict is authorized where exceptional circumstances give rise to an inference of negligence on the part of the defendant which is so strong that it cannot be rejected by reasonable individuals if not rebutted.[20] It is only when there is no issue of fact as to the existence of any of the conditions necessary in order to apply *res ipsa loquitur* that the court may withdraw the issue from the jury or direct the jury to draw the inference of negligence. In these rare cases, the evidence will so strongly support the inference that the plaintiff will be entitled to a directed verdict:

> There are cases, [ ] such as that of the human toe in the plug of chewing tobacco, or the collision of railway trains trying to run on the same track, where the inference of negligence is so clear that no reasonable man could fail to accept it; and in such cases, if the defendant offers no explanation, a verdict should be directed for the plaintiff. In other words, the procedural effect of a *res ipsa* case is the matter of the strength of the inference to be drawn, which will vary with the circumstances of the case.

WILLIAM L. PROSSER, TORTS 212 (2d. ed. 1955). *See, e.g.,* William L. Prosser, *Res Ipsa Loquitur in California,* 37 Cal. L.Rev. 183 (1949) ("where the facts bespeak negligence beyond dispute a verdict should be directed if the absence of sufficient evidence to the contrary . . ."); *Douglas by Kelly v. Bd. of Edu.,* 127 Ill.App.3d 79, 82 Ill.Dec. 211, 468 N.E.2d 473, 476 (1984) (finding that where a school's window pane fell on plaintiff while she was sitting at her desk, plaintiff was entitled to a directed verdict based on *res ipsa loquitur* ); *Moore v. Atchison,* 28 Ill.App.2d 340, 171 N.E.2d 393 (1960) (finding that directed verdict for the plaintiff was proper where there was no direct evidence as to why two trains collided, even though the defendant showed that the equipment was properly

**20.** See, generally, B.H. Glenn, *Res ipsa loquitur as ground for direction of verdict in favor of plaintiff,* 97 A.L.R.2d 522 (1964).

inspected and in excellent working order, because the circumstances made the inference of negligence so strong that reasonable men could not reject it); *Silvern v. Barbagallo,* 195 N.Y.S.2d 32 (N.Y.Sup.Ct.1959) (holding that the injured passenger of a cab was entitled to summary judgment against the driver because the *prima facie* proof is so convincing that the inference of negligence is inescapable); *Richard Equipment Corp. v. Manhattan Indus. Contracting Co.,* 9 A.D.2d 691, 191 N.Y.S.2d 587 (1959) (same); *Sullivan v. Crabtree,* 258 S.W.2d 782 (Tenn.Ct.App.1953) (recognizing that "in exceptional cases the inference may be so strong as to require a directed verdict for plaintiff.").

The only fact that was in dispute during trial was the positioning of Decedent on the table. This fact, however, is inconsequential to assessing Defendants' negligence. Even if Decedent was placed on his back in the center of the table as Defendants maintain, the fact remains that Decedent fell from the table to the floor, and Defendants have not offered any evidence explaining the cause of the fall. Pursuant to the above discussion, this is not the type of event that occurs without negligence; the evidence sufficiently eliminates other causes; and the negligence was within the scope of Defendants' duty to Decedent. RESTATEMENT (SECOND) OF TORTS, § 328D.

Thus, taking all of the evidence in the light most favorable to the Defendants as verdict winners, we believe the inference of negligence is so strong that no two reasonable minds could disagree; no reasonable jury could fail to accept the inference of negligence arising therefrom. This is precisely the exceptional case contemplated by § 328D and for which the grant of judgment n.o.v. is proper.[21]

### b. Wrongful Death

In order to recover in an action for wrongful death, the plaintiff must prove that the death was caused by violence

---

**21.** Thus, it is clear that, had the trial court properly permitted Quinby to use the inference of *res ipsa loquitor,* she would have been entitled to a directed verdict at trial.

or negligence of the defendant. *See* 42 Pa.C.S. § 8301(a). Therefore, liability for wrongful death requires a determination that a defendant's negligence caused the death. In our prior discussion, we determined that this case called for a judgment n.o.v. as to the survival action based on negligence. Negligence, however, is only half of the wrongful death equation. A question remains regarding whether the injuries caused by Defendants' negligence eventually caused Decedent's death.

At trial, the parties vigorously disputed whether the fall caused Decedent's subsequent death. The question of whether Defendants' negligence was a proximate cause of the injury is ordinarily one to be decided by the fact finder. *Kite v. Jones,* 389 Pa. 339, 132 A.2d 683 (1957); *Evanuik v. Univ. of Pittsburgh,* 234 Pa.Super. 287, 338 A.2d 636 (1975). Therefore, because a factual issue remains regarding whether the injuries sustained in the fall eventually led to Decedent's death, we remand to the trial court for a new trial on the wrongful death count. However, we have already determined, pursuant to our prior discussion of negligence, that Quinby has established that Decedent's fall occurred due to Defendants' negligence. Therefore, in the new wrongful death trial the only factual issue for the jury to determine is whether Decedent's death resulted from injuries sustained during the fall, thus warranting recovery of those damages peculiar to a cause of action for wrongful death. *See* 42 Pa.C.S. § 8301(c).

Accordingly, we reverse the Superior Court's grant of judgment n.o.v. as to the wrongful death count and remand for a new trial limited to the issue of whether the injuries resulting from the fall led to Decedent's death.

### III. Admissibility of Evidence

As we conclude in the prior section that the Superior Court properly determined that Quinby was entitled to judgment n.o.v. on the issue of liability for negligence, and the matter, therefore, will be remanded to the trial court on the issue of damages and to determine whether Decedent died as a result of the fall, the final remaining claim of Defendants

concerns the Superior Court's ruling on the admissibility of certain evidence sought to be introduced by Quinby at trial. Specifically, as noted earlier, at trial, Quinby sought to introduce the audio portion of a videotape Decedent had made twenty-two months prior to his fall in order to show the strength of Decedent's voice and thereby his condition prior to the incident. Additionally, Quinby sought to introduce Decedent's videotaped deposition, which was taken after the fall, in order to contrast his condition before and after the accident.

The trial court ruled that Quinby could not introduce the audiotape of Decedent twenty-two months prior to the incident or the videotape of his deposition, which took place one day before his death. Regarding the audiotape, the court ruled that Quinby's purpose in introducing the tape, i.e., to show the strength of Decedent's voice, was irrelevant to the "ultimate issue" in the case, which, apparently, the court viewed as the issue of liability. Regarding Decedent's deposition, the court ruled that the videotaped deposition could not be introduced, but permitted it to be read to the jury, finding that its probative value was outweighed by its potential for "unfair prejudice" as it was likely being used by Quinby to elicit sympathy on the part of the jurors.

The Superior Court reversed the trial court on both rulings. First, the court noted that the audiotape portion of Decedent's videotape made prior to the accident was relevant to show "the pace and extent of [Decedent's] physical decline." With regard to the deposition testimony, the court ruled that such evidence was relevant because it was particularly important for the jury to assess the Decedent's credibility and that, if alive, the court could not preclude his testimony.[22]

Defendants now argue that the Superior Court improperly reversed the trial court's rulings, claiming that court was within its discretion in ruling on the evidence and that the Superior Court improperly usurped the trial court's function in issuing contrary rulings. Quinby, on the other hand, argues that the Superior Court properly reversed the trial court's

22. Given our rulings herein, Decedent's credibility is irrelevant to liability. It is nevertheless important to a determination of damages.

rulings in this regard because the evidence that she sought to introduce was particularly relevant to the jury's assessment of Decedent before and after the fall for purposes of the issue of causation and damages. We agree.

While the admission of evidence rests within the sound discretion of the trial court and will only be reversed upon a showing that it abused its discretion, *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75 (2004), here the court excluded the audio tape of Decedent on the basis of its relevancy to the issue of liability, but did not consider its relevancy with regard to the issue of damages for negligence and causation for wrongful death. Likewise, the court apparently never considered the use of Decedent's videotape deposition for purposes of damages or causation. Clearly, Decedent's physical condition before and after the incident, including the quality of his voice, was relevant to the issues of damages and causation of death, which are the issues to be tried by the court on remand. Thus, as we conclude the Superior Court properly determined that this evidence should not have been excluded, we affirm its decision in this regard and direct that such evidence be considered, subject to any objections not ruled on herein, for purposes of the trial on damages and wrongful death.

Accordingly, based on the foregoing, we affirm the order of the Superior Court in part and reverse in part, and remand for a trial on damages and for wrongful death, consistent with this opinion.

Chief Justice CAPPY and Justices NEWMAN and BALDWIN join this opinion.

Justice SAYLOR files a concurring and dissenting opinion.

Justice EAKIN files a dissenting opinion in which Justice CASTILLE joins.

Justice SAYLOR, concurs and dissents.

I join the disposition of evidentiary matters in Part III of the majority opinion, and I agree with the majority's holding

that the trial court erred by denying Mrs. Quinby's request for a charge permitting negligence to be inferred under the doctrine of *res ipsa loquitur*. I respectfully differ, however, with the majority's conclusion that there was no reasonable dispute at trial concerning whether Mr. Quinby's fall was due to negligence, *see* Majority Opinion at 200–03, 907 A.2d at 1072–73, and with its holding that judgment notwithstanding the verdict should be entered on the negligence question, *see id.* at 209–10, 907 A.2d at 1077.

The majority aptly describes the governing legal principles. Of particular importance here are the general functioning of *res ipsa loquitur* as an evidentiary rule supporting a permissive inference of negligence, *accord Gilbert v. Korvette, Inc.*, 457 Pa. 602, 611, 618, 327 A.2d 94, 99, 103 (1974), and its enhanced role as effectively establishing a mandatory presumption in exceptional circumstances, where the question of negligence is not reasonably subject to competing conclusions, *see id.* at 618, 327 A.2d at 103. My primary difference with the majority concerns whether the circumstances in this case fall within the general rule, or the narrow category of exceptional circumstances.

In this regard, the Court has previously explained that, to rebut the inference of negligence in a *res ipsa* case (and thus to advance a factual question), the defendant need not identify the cause of the accident giving rise to litigation, but instead, may rely on evidence supporting a conclusion that he exercised due care. *See, e.g., Miller v. Hickey,* 368 Pa. 317, 332, 81 A.2d 910, 917 (1951); *Bender v. Welsh,* 344 Pa. 392, 395, 25 A.2d 182, 184 (1942). At the trial of this case, several defense witnesses testified that Mr. Quinby was positioned on his back in the center of the examination table, and a defense expert testified that Dr. Burmeister complied with the standard of care in this placement, with no reason to expect that the patient would be able to move himself or to fall. *See* N.T. February 4, 2003, at 750. In these circumstances, while again, I agree that Mrs. Quinby was entitled to a *res ipsa* instruction and the associated, permissible inference of negligence, I do not believe that the matter should be removed entirely from the province of the jury as fact-finder. *See generally Moure*

*v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992) (explaining that, in reviewing a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the verdict winner, affording it the benefit of every reasonable doubt and resolving conflicts in testimony in its favor).

Indeed, in my view, the majority's decision impliedly discounts the testimony of fact witnesses and/or the defense evidence concerning the applicable standard of care. As to the former, I would follow the general approach leaving credibility assessments to the fact-finder; as to the latter, the evidence seems better suited to review under the standards governing the admissibility of expert testimony than to rejection under *res ipsa* theory.

For the above reasons, I would reverse entirely the Superior Court's entry of judgment notwithstanding the verdict in favor of Mrs. Quinby and remand for a new trial on liability and damages.

Justice EAKIN, dissents.

In some cases where the plaintiff cannot present direct evidence to establish every element of a cause of action for negligence, the doctrine of *res ipsa loquitur* may support an inference of negligence on the defendant's part. *See, e.g., Toogood v. Rogal,* 573 Pa. 245, 824 A.2d 1140 (2003)(plurality); *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981); *Gilbert v. Korvette, Inc.,* 457 Pa. 602, 327 A.2d 94 (1974). It may be inferred that the plaintiff's harm is caused by negligence of the defendant if the plaintiff has presented evidence showing: (1) the damaging event does not normally occur absent negligence; (2) all other responsible causes have been sufficiently eliminated; and (3) the asserted negligence is within the scope of the defendant's duty to the plaintiff. *See* Restatement (Second) of Torts § 328D(1)(a)-(c); *Gilbert,* at 100–02. "Where there is no direct evidence to show cause of the injury, and the circumstantial evidence indicates that the negligence of the defendant is the most plausible explanation for the injury, the doctrine applies."

*D'Ardenne v. Strawbridge & Clothier, Inc.,* 712 A.2d 318, 321 (Pa.Super.1998) (citing W. Page Keeton *et al.,* Prosser and Keeton on the Law of Torts § 40, at 257 (5th ed.1984)). Thus, the doctrine relieves the requirement that a plaintiff present direct evidence of each element of a cause of action for negligence in those cases where it is obvious negligence has occurred, but cannot be directly proven.

Here, appellee presented direct evidence in support of the allegation that her husband's injuries and death were caused by specific acts of negligence by appellants. Appellee asserted appellants breached their duty of due care by failing to place Quinby in a stable position on a table with rails or restraints, and by failing to remain in the exam room with him. Majority Slip Op., at 4–5. In support of these allegations, appellee presented her husband's deposition testimony that he was left lying on his right side on the exam table, along with evidence that the exam table lacked rails or restraints and that appellants failed to remain in the exam room with him. Appellee also presented the expert testimony of Dr. Bradley Fenton, who testified appellants' failure to "ensure that [Quinby] was left safely and securely on the examination table at all times" constituted a breach of the standard of care. *Id.,* at 5–6. Appellee presented evidence to establish the duty, breach, causation, and damages elements of a negligence action; therefore, the evidence did not require that the jury infer any of these elements. As in any case of ordinary negligence, the evidence here required only that the jury weigh the evidence, make credibility assessments, and determine whether appellants were negligent. I would hold the doctrine is unavailable where, as here, the plaintiff makes specific allegations of negligence and presents direct evidence in support of each element thereof; granting the plaintiff an evidentiary bypass in such a case is not in accord with the doctrine's intended goal.

Even if *res ipsa loquitur* was available here, appellee failed to satisfy the three requirements set forth in § 328D(1).[1]

1. In *Lonsdale v. Joseph Horne Company,* 403 Pa.Super. 12, 587 A.2d 810, 815 (1991) and *Neve v. Insalaco's,* 771 A.2d 786, 792 (Pa.Su-

Appellee was required to present evidence showing the damaging event would not have occurred in the absence of negligence. Stated differently, appellee had to show the fall would not normally have occurred if appellants had done what due care required. Dr. Burmeister had treated Quinby for 25 years prior to this fall, and was familiar with Quinby's abilities and limitations. Appellants presented the expert testimony of Dr. Joseph Bender, who opined their actions were consistent with the applicable standard of care since, under the circumstances, appellants had no reason to expect Quinby would experience a movement that would result in his falling from the table. R.R., at 892a. Dr. Bender testified that under the circumstances known—and knowable—to appellants, their actions were not unreasonable. *Id.* In light of this evidence, I cannot agree that appellee presented sufficient evidence showing Quinby's fall would not have occurred absent some negligent act. If there is evidence appellants did what due care required, where is the support for an inference to the contrary? [2] Misfortunes can happen even when proper care and skill are exercised, and under the totality of the circumstances presented here, I do not believe appellee met her burden of presenting evidence which, if found credible, sufficiently established that Quinby's fall would not have occurred but for some negligence on the part of appellants.

per.2001), the Superior Court concluded that even if *res ipsa loquitur* is available in theory, the plaintiff must also be able to satisfy § 328D(1).

**2.** This case is more akin to the facts presented by *Lonsdale, supra,* at n. 1, wherein the plaintiffs filed an action against the defendant, who owned a store where one of the plaintiffs was injured due to a defective faucet in the defendant's restroom. The court stated:

[T]here was no evidence presented at trial that, if found credible, would eliminate third parties (*e.g.,* manufacturer and other store patrons) as possible causes of the accident. Furthermore, common human experience suggests some explanations for a faucet handle breaking (excessive, inordinate and improper use) which do not involve negligence. The totality of these circumstances cannot be viewed to raise an inference of negligence ... and, as it is still the [p]laintiff's responsibility to advance some evidence to buttress her allegation, we find no justification for reversing the trial court's ruling....

*Lonsdale,* at 816 (citation omitted).

In addition, I believe appellee failed to meet her burden of presenting evidence which sufficiently eliminated all other potential causes of Quinby's fall. Although appellants did not present evidence that something other than their own negligence caused the fall, the law does not require appellants to make such a showing to avoid the application of *res ipsa loquitur*. Rather, the burden fell squarely upon appellee to show that all other responsible causes were sufficiently eliminated. Appellee failed to present any evidence eliminating the possibility that a third party entered Quinby's room during the time in question and caused the fall. Instead, the evidence showed the exam room door was left open and unguarded. R.R., at 768a.

Furthermore, appellee failed to present evidence eliminating the possibility that Quinby experienced a muscle spasm or seizure which caused him to fall from the table. Quinby's father testified his son experienced leg spasms that were strong enough to "throw his foot out of the wheelchair at times. Or even if he was on the edge of the bed, it would throw it off the edge of the bed if we weren't there controlling it." *Id.*, at 177a. Quinby's father also testified, "it wouldn't really matter on these narrow [examination] tables which way he was laying, he could easily have triggered a fall off the table." *Id.*, at 179a. The only evidence that addressed this possibility was appellee's expert's statement that he was personally unaware of any muscle spasm strong enough to throw a person, lying on their back, from an examination table. Thus, appellee failed to present evidence sufficiently eliminating the possibility that Quinby was properly situated on the table, but experienced a spasm that shifted his balance on the table and caused his fall. Because I believe appellee failed to present evidence sufficiently eliminating all other responsible causes, I would hold she was not entitled to an inference of negligence.[3]

3. It is noteworthy that while I believe the above scenarios are possible, I do not believe either were foreseeable occurences under the circumstances. As such, I do not believe appellants can be said to have breached their duty of care to Quinby by failing to prevent such unforeseeable events.

The doctrine is applicable where it is clear there is no other explanation for the injury short of the defendant's negligence; here, other possible explanations were presented and were not eliminated by the party bearing the burden of doing so. As such, the trial court properly declined to instruct on the doctrine.

A trial court has wide latitude in instructing a jury, and whether the jury should be instructed on a given point of law depends upon the facts and issues in the case. *Ferrick Excavating & Grading Company v. Senger Trucking Company*, 506 Pa. 181, 484 A.2d 744, 748 (1984). It is well established that in examining a trial court's charge, our scope of review is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. *Williams v. Philadelphia Transportation Company*, 415 Pa. 370, 203 A.2d 665, 667 (1964) (citation omitted). An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. *Coker v. S.M. Flickinger Company, Inc.*, 533 Pa. 441, 625 A.2d 1181, 1184–85 (1993) (citation omitted). A finding by an appellate court that it would have reached a different result than the result reached by the trial court does not support a finding that the lower court abused its discretion. *Morrison v. Commonwealth, Department of Public Welfare, Office of Mental Health (Woodville State Hospital)*, 538 Pa. 122, 646 A.2d 565, 571 (1994). "The inquiry is strictly directed at determining whether the trial court's stated reasons and factual basis can be supported." *Coker*, at 1187.

Based upon the evidence, I cannot agree that the trial court committed an abuse of discretion when it failed to instruct the jury on *res ipsa loquitur*. There was conflicting evidence on whether appellants' actions constituted a breach; as this is a question of fact and credibility, it is a question for the jury. If the trial court had instructed the jury that appellee was entitled to an inference of negligence, the court would have deprived the jury of its essential function in a case where

there were clearly questions requiring a jury's consideration. The trial court applied the appropriate law, and determined the evidence did not warrant a *res ipsa loquitur* charge since appellee failed to establish the necessary requirements under § 328D(1). *See* Trial Court Opinion, 8/15/03, at 6–7. While the Superior Court and the majority reach a different result than that of the trial court, a difference of opinion does not warrant a finding that the trial court abused its discretion. The trial court's stated reasoning is amply supported by the record, and appellee does not present adequate grounds to overrule it.

Accordingly, I would hold the trial court did not commit reversible error in failing to instruct the jury on *res ipsa loquitur*, and I would reverse the Superior Court's holding in this regard.

Justice CASTILLE joins this dissenting opinion.