Patricia QUINBY, Executrix of
the Estate of John Quinby,
Deceased, Appellant,

v.

Charles BURMEISTER, M.D., Nurse
Millie Welsh, and Plumsteadville
Family Practice, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 4, 2004.
Filed April 23, 2004.
Reargument Denied June 28, 2004.

Eric G. Zajac, Philadelphia, for appellant.

James P. Kilcoyne, Plymouth Meeting, for Burmeister, appellee.

Michael S. Munger, Norristown, for Plumsteadville, appellee.

Jeffrey McElroy, Philadelphia, for Welsh, appellee.

Before: KLEIN, McCAFFERY and OLSZEWSKI, JJ.

OPINION BY KLEIN, J.:

¶ 1 John Quinby, a quadriplegic, fell off an examination table where he was left unattended following a routine procedure to remove a mole performed by defendant Charles Burmeister, M.D. Mr. Quinby died before the case went to trial, allegedly as a result of the injuries he sustained in the fall. The jury found that the doctor and his nurse, defendant Millie Welsh, R.N., were not negligent. On appeal Patricia Quinby[2] contends, among other things, that the trial court erred in failing to grant judgment n.o.v. on the issue of liability against defendants and in failing to charge the jury on *res ipsa loquitur.* We agree with Quinby on both issues. Therefore, we reverse, directing the entry of judgment for Quinby and against defendants, and remand for a trial on damages.[3]

---

**2.** For simplicity, we will refer to John Quinby as "the decedent" and Patricia Quinby as "Quinby" in this opinion. We will refer to Dr. Burmeister, Nurse Welsh, and Plumsteadville Family Practice collectively as "defendants" unless otherwise noted.

**3.** Our standard of review of an order denying judgment n.o.v. is whether, reading the record in the light most favorable to the verdict winner and granting that party all favorable inferences, there was sufficient competent evidence to sustain the verdict. We will reverse only for an abuse of discretion. *Ferrer v. Trustees of Univ. of Pa.,* 573 Pa. 310, 825 A.2d 591, 595 (2002).

¶ 2 At the time of his fall, the decedent had been a quadriplegic for 19 years and a patient of Dr. Burmeister for even longer. On November 8, 1996, his wife brought him to Dr. Burmeister's office for the routine excision of a mole from the left side of his head. The decedent was moved from his wheelchair to an examination table that had neither side rails nor restraints. Dr. Burmeister successfully removed the mole. Shortly after the procedure, Dr. Burmeister and Nurse Welsh left the room. The decedent testified at his deposition that when the doctor and nurse left, he was lying on his right side. Dr. Burmeister and Nurse Welsh testified that he was lying on his back in the center of the table the entire time and was never lying on his side. The decedent did not know exactly how or why he fell, and neither Dr. Burmeister nor Nurse Welsh was in the room when they heard the "thud" of his fall. After the fall, the decedent allegedly suffered cervical injuries, which led to progressive pulmonary failure and, eventually, his death.

¶ 3 This is an unusual case in which the weight of the evidence supports the plaintiffs' version of what happened and refutes the defendants' testimony. Quinby presented testimony that it would have been impossible for the decedent to have rolled off the table had he been positioned on his back in the middle as defendants claimed. All concede that he was a quadriplegic who could not move. It is true that there was expert testimony that some quadriplegics occasionally have muscle spasms. However, no one testified that the spasms would be of such magnitude to cause a patient lying flat on his back in the center of an exam table to be thrown from the table. Moreover, Dr. Burmeister testified that he had no knowledge of the decedent previously having any spasms (N.T., 2/4/03, at 770–71), and Dr. Burmeister's expert, Joseph Bender, M.D., testified that he did not know of any spasms strong enough to move a body from a table (*Id.* at 751–52).

¶ 4 We agree with Quinby's contention in her reply brief that defendants mischaracterized the testimony of her expert, Bradley Fenton, M.D. Dr. Fenton's testimony that in some cases a healthy person may fall off a table without negligence is irrelevant to whether a *quadriplegic* could fall off a table without negligence. Everyone conceded that the decedent's disability prevented any voluntary movement that could have caused his fall.

¶ 5 The legal theories of weight of the evidence and *res ipsa loquitur* are linked in this case. If no one knew how the decedent was positioned on the exam table, then the doctrine of *res ipsa loquitur* would apply. Under that theory, negligence may be inferred if: (1) the injury that occurred would not normally occur in the absence of negligence; (2) the defendant had exclusive control of the instrumentality that brought about the plaintiff's injury; and (3) the plaintiff did not contribute to the injury. *Toogood v. Owen J. Rogal, D.D.S., P.C.,* 573 Pa. 245, 824 A.2d 1140, 1146 (2003).

¶ 6 Here, the evidence at trial supported a *res ipsa loquitur* instruction. There was evidence showing that:

- a quadriplegic does not normally fall off an examination table absent negligence;
- other causes of the fall were eliminated (*i.e.*, the decedent could not voluntarily move, there was no evidence of spasms sufficient to cause a fall if he were properly positioned, and no one else came into the room in the interim); and
- the negligence was within the scope of a doctor and nurse caring for a quadriplegic.

¶ 7 Even if there were evidence of spasms sufficient to cause the decedent to roll off the table from a position lying on his back, defendants still would be considered negligent. If that is a likely risk, then Dr. Burmeister and Nurse Welsh should not have left the decedent, a known quadriplegic, alone and unsupervised on a table without side rails or restraints.

¶ 8 Even if the entry of judgment n.o.v. for Quinby on liability were not warranted, we conclude that the trial court erred in denying a *res ipsa loquitur* charge. Even if the decedent did not know how he was positioned and there was only defendants' testimony that they left him lying on his back in the center of the table, there still was no explanation as to how he fell. The *res ipsa loquitur* charge would have been appropriate to make the inference and respective burdens of proof clear to the jury so it could weigh that inference against defendants' testimony. It was error for the trial court to refuse the charge. *See Leone v. Thomas,* 428 Pa.Super. 217, 630 A.2d 900, 901–02 (1993).

¶ 9 Quinby also challenges two of the trial court's evidentiary rulings. She claims the trial court erred in precluding her from (1) showing the decedent's videotaped deposition, taken the day before he died, to the jury and (2) playing the audio portion of a videotaped presentation the decedent had prepared 22 months before his fall. The trial court only allowed the transcript of the deposition to be read to the jury. It precluded the playing of both videotapes out of concern that they would engender sympathy for the decedent. We agree with Quinby that this was an abuse of discretion.[4]

¶ 10 First, we see no legal grounds for precluding the showing of the decedent's videotaped deposition to the jury. Pennsylvania Rule of Civil Procedure 4017.1 permits such depositions to be taken, and Rule 4020(a)(3) confirms that, as the testimony of a deceased party, it may be shown to the jury.

¶ 11 Moreover, we do not believe Pennsylvania Rule of Evidence 403 authorizes a trial court to *totally* exclude the video portion of a party's deposition. If there is a particular portion of the deposition that might be overly prejudicial, that portion could be excluded. However, credibility was important in this case, as the decedent said he was placed on his side before the fall and defendants said he was placed on his back. The jury was entitled to view the decedent to assess his credibility. *See Commonwealth v. Birch,* 532 Pa. 563, 616 A.2d 977, 979 (1992) ("[I]n view of the conflicting versions of the facts given by prosecution and defense witnesses, it was of paramount importance that the jury be afforded a full and adequate basis upon which to assess the credibility of witnesses.").

¶ 12 Certainly, if the decedent had not died before trial, the trial judge would not have had the authority to preclude him from testifying and require him instead to be deposed and have the transcript read to the jury. The jury would have had to see him ill and close to death, even if a cautionary instruction would have been necessary. There should be no difference if the plaintiff's testimony is on videotape. It is still his case, even if he has died. The jury had the right to see the decedent to assess his credibility, even if this may have produced some sympathy for him.

¶ 13 Second, the trial court improperly precluded the audio portion of a videotaped talk the decedent had prepared for

---

4. We will reverse the trial court's ruling on the admissibility of evidence only for an abuse of discretion. *Sprague v. Walter,* 441 Pa.Super. 1, 656 A.2d 890, 907 (1995).

high school students 22 months before his fall. The videotape was offered to show the quality and strength of the decedent's voice at that time, which was relevant to show the pace and extent of his physical decline. Because there was testimony that there was *no deterioration* of his voice between the time of the tape and the fall, the audio portion of the tape was an appropriate aid to show the quality of his voice. We note that other audio portions of the tape also might have been admissible to show the decedent's state of mind before the fall, to contrast it with his state of mind as described by witnesses after the fall. *See* Pa.R.E. 803(3).

¶ 14 Judgment reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.