Lamha Winnie **CHENG**, as parent and natural guardian of Jason Zou Cheng

v.

**SEPTA and MV Transportation, Inc. and Jesus Rodriguez and Zong Liang Zou**

**Appeal of: MV Transportation, Inc. and Jesus Rodriguez.**

Commonwealth Court of Pennsylvania.

Argued Nov. 11, 2008.
Decided Aug. 6, 2009.

Nigel A. Greene, Philadelphia, for appellants.

John R. Mininno, Philadelphia, for appellee, Lamha Winnie Cheng.

Frank C. DePasquale, Jr., Philadelphia, for appellee, Zong Liang Zou.

BEFORE: COHN JUBELIRER, Judge, BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

MV Transportation, Inc. (MV) and Jesus Rodriquez (Rodriguez; collectively with MV, the Defendants) appeal from an order of the Court of Common Pleas of Philadelphia County (Trial Court) denying Defendants' Motion for Post Trial Relief.

On March 1, 2006, Lamha Winnie Cheng, as the parent and natural guardian of Jason Zou Cheng (collectively, Cheng) filed a Complaint in the Trial Court alleging negligence against the above-captioned Defendants. Cheng alleged, in relevant part, that Cheng, a five-year-old boy, had been struck and run over by a paratransit mini-bus while crossing the street at a Philadelphia intersection. Cheng sued the Southeastern Pennsylvania Transit Authority (SEPTA), MV, who performed transportation services under a contract with SEPTA, and Rodriguez, the driver of the mini-bus. The Defendants thereafter joined, as an additional defendant, Zong Liang Zou (Zou), the victim's uncle, alleging negligent supervision.

Following the close of the parties' pleadings,[1] a trial was scheduled for July 16–18, 2007. At Trial, Cheng introduced evidence showing, *inter alia*, that at 3:00 p.m. on October 19, 2005, Cheng was walking home from school with Zou when the pair crossed at a traffic intersection cross walk. Zou testified that Cheng was approximately one meter in front of him in the crosswalk when MV's mini-bus came quickly around the intersection's corner and struck Cheng.

Cheng testified as to her son's injuries and prolonged hospital stay following the accident, including testimony that Cheng continues to walk with a limp due to lingering pain from his injuries. Cheng further testified that her son has trouble controlling his bladder and bowels since the accident and has come home from school having soiled his pants.

Cheng's medical expert, Dr. Stepanuk, was qualified as an expert in orthopedics and trauma, and testified as to the extent of Cheng's injuries which included a fractured right hip, fractured pelvis, separation of the sacroiliac, lumbar sprain and strain, hematoma, nocturia and bowel injury resulting in ongoing bowel problems, and cephalgia.

As the driver of the van, Rodriguez testified, *inter alia*, that he saw Cheng and Zou waiting at the corner crosswalk, and began to turn when they did not proceed to cross. He testified that he did not try to communicate with them, via hand gesture or by honking the horn, prior to beginning his turn. Rodriguez further testified that as he proceeded into the intersection he did not see Cheng but felt a bump in his mini-bus as a passenger began screaming that he had hit the child. Rodriguez agreed that photographs taken at the scene showed that his turn had been very sharp and had resulted in his mini-bus driving partly on the wrong side of the yellow line. The

---

1. The parties engaged in a course of new matter assertions, answers, cross claims, amendments, and preliminary objections, none of which are at issue in the instant appeal.

defense also offered an accident reconstruction expert who testified as to a number of opinions, including that the driver of the mini-bus had acted reasonably.

The defense had also scheduled a medical expert, Dr. Berger, to testify. As the trial came to a close, the Trial Court was prepared for Dr. Berger's testimony near the end of the second scheduled day on July 17, 2007, at which time defense counsel informed the Trial Court that they had not scheduled Dr. Berger to testify until the following day. The Court adjourned to accommodate Dr. Berger's appearance the next day. On the next morning, however, defense counsel informed the Trial Court that Dr. Berger was not available until later the afternoon. Having no additional witnesses to offer, the defense requested that the Court adjourn and reconvene later that afternoon for Dr. Berger's appearance. The Trial Court refused, and ordered counsel to begin their closing arguments. Following the parties' closings, the jury found for Cheng in the amount of $250,000, finding MV 5% negligent and Zou 95% negligent.

Both parties thereafter filed Post Trial Motions. Cheng sought delay damages, which were granted by the Trial Court. The Defendants sought relief from the Trial Court's judgment, namely, either a new trial and/or a judgment notwithstanding of the verdict (JNOV), both of which were denied by the Trial Court by order dated October 11, 2007. The Defendants now appeal to this Court.[2],[3]

■ This Court's scope of review of a decision of a trial court denying motions for judgment notwithstanding of the verdict or a new trial is limited to a determination of whether the trial court abused its discretion, or committed an error of law controlling the outcome of the case. *Williams v. Southeastern Pennsylvania Transportation Authority*, 741 A.2d 848 (Pa.Cmwlth.1999), *petition for allowance of appeal denied*, 563 Pa. 680, 759 A.2d 925 (2000).

Defendants present four issues[4] for review: (1) whether the Defendants are entitled to a new trial due to the Trial Court's failure to allow the Defendants' medical witness to testify; (2) whether the Defendants are entitled to a new trial due to the Trial Court's failure to charge the jury regarding the duty of a pedestrian in a crosswalk; (3) whether the Defendants are entitled to a new trial due to the Trial Court's abuse of discretion in precluding the video deposition of independent witness Shirley Harris, and; (4) whether Defendants are entitled to JNOV because the verdict was contrary to law and the weight of the evidence presented.

■ We first address Defendants' argument that the Trial Court erred in refusing a short continuance of several hours for the purpose of allowing the appearance of Defendants' medical expert, Dr. Berger, as a damages witness. In its Opinion in support of its order denying Defendants' Post–Trial Motions and entering judgment

---

**2.** The Trial Court subsequently issued an opinion in support of its order pursuant to Pa.R.A.P.1925(a).

**3.** This appeal was originally filed with Superior Court, which transferred the matter to this Court by order dated March 10, 2008.

**4.** Defendants attempt to present additional issues to this Court by raising them in the

Argument section of their brief hereto. However, since Defendants have failed to set forth these additional issues within their Statement of Questions Presented, and as those additional issues are not reasonably suggested thereby, they are waived. Pa.R.A.P. 2116(a); *Joe v. Prison Health Services, Inc.*, 782 A.2d 24 (Pa.Cmwlth.2001).

for Chou, the Trial Court recounted its reasoning in denying Defendants' an opportunity to present Dr. Berger's testimony:

> Defense scheduled a medical expert, Dr. Berger, to testify regarding Jason [Chou]'s injuries but was not prepared to have him testify when the Court was ready to proceed. [Transcript of the proceedings (hereinafter, N.T.)] [7/17/07, 181–185]. The Court was prepared for Dr. Berger's testimony at 4:00 P.M. on July 17, 2007, as he would have been the last witness offered by the Defense but counsel informed the Court at that time that he had not scheduled Dr. Berger to testify until the following day. Discontentedly, the Court adjourned early on July 17, 2007 in order to accommodate Dr. Berger the following morning. Unfortunately, however, the following morning Defense counsel informed the Court that Dr. Berger would not be available until that afternoon. Having no additional witnesses to offer, Defense counsel asked the Court to adjourn and reconvene when the doctor was available later in the day. The Court refused Defense counsel's request to delay trial any further and ordered counsel to make closing arguments. N.T. 7/18/07, 5.

Trial Court Opinion dated January 25, 2008 (hereinafter Tr. Ct. Op.) at 5.

The transcript of proceedings before the Trial Court for July 17, 2007, contained the following passage regarding this issue, which occurred at the end of the second day of the three-day trial after Defendants had presented their other witnesses in support of their case-in-chief:

> **Mr. Green [Defendants' counsel]:** Your Honor, our next witness is not scheduled to be here until tomorrow.
>
> **The Court:** Who scheduled him?

**Mr. Green:** Excuse me? It was done by agreement with counsel, Your Honor.

**The Court:** Is it going to be video?

**Mr. Green:** It's [sic] going to be live, Your Honor. It's [sic] the defense medical expert.

**The Court:** Excuse the jury.

[The jury is excused from the courtroom]

**The Court:** Are you presenting any evidence?

**Mr. DePasquale [Zou's counsel]:** I am not, Your Honor.

**The Court:** Counsel, I don't know why you think you can presume to schedule people. You know we work here until 5 o'clock. It's only 4 o'clock and you're going to have to have witnesses tomorrow. Otherwise, it has to hold over until next week.

**Mr. Green:** Your Honor, I do believe we can finish the case tomorrow and I did not presume to schedule things. I made a good faith effort to communicate with plaintiff's counsel regarding the timing of witnesses.

**The Court:** Whether it's [sic] you and plaintiff's counsel or you alone, you're supposed to have your witnesses here. Who do you have to testify?

**Mr. Green:** Excuse me.

**The Court:** Who is testifying?

**Mr. Green:** The witness I'm referring to is our defense medical expert Dr. Barry Burger [sic] who is coming from Allentown.

Reproduced Record (R.R.) at 216a–217a. Following the above exchange, the Trial Court and Mr. Green had a brief discussion regarding other potential witnesses, and the Court instructed all counsel to use the remainder of time that day to consult and develop their points for charging the jury. *Id.* The Trial Court concluded by informing the court crier to dismiss the

jury, with the Trial Court responding to the crier's question to have the jury return at nine o'clock. *Id.* The Trial Court then adjourned.

The next morning, the proceedings began with the following exchange:

**The Court:** All right. Who is your first witness for this morning?

**Mr. Green:** Your Honor, if I may, I do not have a witness for this morning and I'll explain to the Court why. The witness I intended to call, Dr. Burger[sic], is performing surgery this morning and is unavailable and I just wanted to give the Court some context as to why we had him scheduled for the afternoon.

On May 3rd there was a pretrial order issued in this case and that order specifically directed the parties to discuss issues such as pretrial motions, scheduling.

**The Court:** Are you telling me you don't have any witnesses this morning?

**Mr. Green:** I do not have a witness this morning, Your Honor.

**The Court:** Okay. You have some other witness you can put on?

**Mr. Green:** I do not have a witness for this morning, Your Honor.

**The Court:** Okay. Well, then I think you're probably going to be required to go to closings.

**Mr. Green:** If I could just note my objection for the record, Your Honor. Just to be clear, it was not done with any intent to offend the Court.

**The Court:** The Court is not offended. The Court is ready to go to trial. We had Discovery Court this morning and because we had this and we were willing to complete this case, we continued 200 matters in Discovery Court to 2 o'clock this afternoon, okay. And if you're not ready to proceed, then we're just going to go as if you had proceeded.

*Id.* at 219a–220a. Following the above passage, Defendants marked and moved their exhibits into evidence, and the Trial Court and the parties proceeded to their charging conference, at which some confusion ensued as to what precisely constituted the parties' respective agreed-upon and disagreed-upon charges. *Id.* at 219a–220a. Following a further discussion in the robing room, a brief recess was held to allow counsel to formulate their requested jury charges. *Id.* When Court reconvened, the jury charges were completed, the jury brought into the courtroom, and the parties' respective closings ensued. *Id.* at 220a–226a.

As regards the purported scheduling of Dr. Berger's testimony, the Trial Court's pretrial order required a pretrial meeting of counsel to meet and show good faith in, *inter alia,* "minimizing the number of witnesses" and "to enter into such other reasonable agreements as will expedite the trial." *Id.* at 25a–26a. Further, the record shows that by letter dated July 5, 2007, Defendants requested of the Trial Court that Dr. Berger be scheduled to testify on July 18, 2007, two days after the scheduled start date for the trial. *Id.* at 65a. That same letter requested that the Trial Court advise Defendants if that scheduling was not acceptable to the Trial Court, so that other provisions could be made. *Id.*

Defendants now argue that the Trial Court erred and/or abused its discretion in denying Defendants' request to allow a continuance of a few hours to accommodate the testimony of Dr. Berger. Defendants emphasize that Dr. Berger was the sole defense witness on damages, and that the defense both anticipated the scheduling difficulties of accommodating a practicing pediatric surgeon. The Defendants contend that the Trial Court and all parties to this action were informed of the

intended schedule for the Doctor's testimony while requesting that the Court notify Defendants if the proposed scheduling of Dr. Berger's testimony was not acceptable.

Defendants further assert that during the course of the first two scheduled days of the trial, Cheng's liability expert did not testify, and witness Shirley Harris was precluded from testifying, which events shortened the anticipated length of the trial by one day. While continuing the trial to the next day in response to Defendants' request to accommodate Dr. Berger's schedule, Defendants emphasize that the additional delay requested to allow that appearance was occasioned by Dr. Berger's schedule to perform two pediatric surgeries that morning. Defendants further emphasize that the Trial Court refused to allow a short delay of, at most, 2–3 hours, to allow Dr. Berger to testify. Consequently, Defendants were forced to rest their case without benefit of Dr. Berger's scheduled testimony. Defendants argue that the brief delay requested would not have caused the trial to last any longer than originally scheduled, and that the manifest injustice of the Trial Court's refusal to allow that additional brief continuance of several hours is underscored by the Trial Court's action in interrupting Defendant Rodriguez's testimony to accommodate the schedule of Cheng's medical expert earlier in the trial. *See* R.R. at 124a. Defendants argue that the Trial Court's refusal to delay the case for a few hours was an abuse of discretion that severely prejudiced Defendants by denying them the opportunity to present evidence to rebut Cheng's damages claims; under the instant circumstances, the significant prejudice inflicted upon Defendants outweighed the interest of the Trial Court in closing this case 2–3 hours ahead of the original schedule.

Cheng argues that the Trial Court acted soundly within its discretion in denying Defendants' request for a second continuance, in that Defendants had an opportunity on July 17 to advise the Court that a continuance was necessary until the *afternoon* of the 18th. After failing to do this, granting the second continuance request would have been an inconvenience to the court, the jury, and opposing counsel, and would have resulted in prejudice to Cheng. As noted by the Trial Court in its Opinion to this Court, Cheng argues that requiring the jury to wait all day to hear Defendants' last witness may have given that testimony additional weight in the jury's eyes.

This Court has previously acknowledged our standard of review of a trial court's ruling on a request for a continuance due to the absence of a witness, citing to the rule as set forth by the Supreme Court of Pennsylvania:

> [W]hile it is the policy of the law that the parties to an action have the benefit of the personal attendance of material witnesses whenever reasonably practicable, it necessarily lies within the discretion of the trial court to determine, in light of all of the circumstances of each case, whether or not a cause before it should be continued on the ground of absence of material witnesses. Such a continuance will be granted only where it is shown that their expected testimony is competent and material, and not merely cumulative or impeaching; that it is credible and would probably affect the result ...

*Barner v. Juniata County Tax Claim Bureau*, 104 Pa.Cmwlth. 468, 522 A.2d 169, 170–171, *petition for allowance of appeal denied*, 515 Pa. 624, 531 A.2d 432 (1987) (quoting *Carey v. Philadelphia Transportation Co.*, 428 Pa. 321, 324, 237 A.2d 233, 235 (1968)) (additional citation omitted).

*Carey* also emphasizes that the inherent power to grant or refuse a continuance is one clearly within the discretion of the trial court, the exercise of which will not be overturned upon review absent a clear showing of an abuse of that discretion. *Carey*, 428 Pa. at 325, 237 A.2d at 236.

Our Supreme Court has also recognized the deference to be accorded to trial courts in their urgent and rightfully prioritized quest to expedite the matters before them in light of the heavy caseloads faced thereby; however that deference has been expressly tempered by our appellate courts' refusal to place the efficient and timely adherence to trial court calendars above the cause of the needs of justice in all circumstances:

> We are, of course, loath to interfere in the workings of the calendar control court.
>
> Nevertheless, we must caution that speedy disposition is not the sole element to be considered in dispensing justice, and that where special circumstances exist, special consideration must be given lest we allow statistical considerations and analyses to become the be-all and end-all of our system of justice.

*Budget Laundry Co. v. Munter*, 450 Pa. 13, 23–24, 298 A.2d 55, 59 (1972).

Turning to the facts *sub judice*, we first note that no address was made of the competency, materiality, or cumulative or impeaching nature of the testimony proposed to be offered by the Defendants' witness for whom the continuance was sought. The excerpts of the transcript dealing with this issue, as shown above, establish that the Trial Court addressed Defendants' two requests for a continuance in curt fashion—which fashion is within the Trial Court's prerogative—that addressed only and exclusively the Trial Court's desire to finish the matter before it quickly and without delay.[5] Given that approach as applied by the Trial Court, our standard as articulated in *Carey* is of little guidance in reviewing the Trial Court's exercise of its discretion.

We further note that the instant matter is not a case of protracted litigation where expediency has become a concern within the trial itself, or where undue delay has plagued the proceedings; to the contrary, this was a trial where the proceedings were ahead of the scheduled pace, which acceleration appears from the record to be the primary reason why the witness was unavailable to appear. Additionally, we note that Defendant's medical expert was unavailable to testify when preferred by the Trial Court, once this trial's schedule

---

**5.** The Trial Court, in its opinion to this Court in support of its order, states that an additional ground for its refusal to grant the requested continuance exists in that continuing the matter for the requested several hours "may have given this testimony additional weight in the eyes of the jury." Tr. Ct. Op. at 10. In their brief to this Court, Cheng advances the same argument. We reject this reasoning. Defendant Rodriguez's testimony before the jury was interrupted to accommodate the schedule of Cheng's medical testimony, which interruption was unexplained to the jury by the Court without regard for its effect upon the weight that might be accorded thereto by the jury in light of that interruption. R.R. at 124a. Secondly, any undue weight concerns of the Court would not have seriously prejudiced Cheng in light of the Trial Court's ability to issue an additional jury instruction addressing the continuance. Further, given the Trial Court's failure to state its concern of undue weight accordance due to the requested continuance during its discourse with the parties on the record at the time that the continuance was requested, Defendant was never afforded the opportunity to move for such a corrective instruction. It is inarguable that the Trial Court stated no such basis as a ground for its refusal of Defendants' continuance request, and limited its discussion of the issue exclusively to the Trial Court's concern over its ongoing schedule and a quick disposition to the instant matter in accordance therewith.

was initially accelerated from a scheduled three-day length to a potential two-day length, due to the witness's schedule of pediatric surgeries, occurring on the morning of the final day of this trial.

Finally on this issue, we note that consonant with the Trial Court's stated concerns with its schedule and with the timeliness of proceedings before it, Defendants expressly informed the Trial Court in writing—in advance of the trial-of their anticipated scheduling difficulties concerning this witness, and of their intention to call this witness on the afternoon of July 18. Defendants expressly requested a reply concerning this scheduling intention, and the record contains no such communication of any kind from the Trial Court, or any recognition of Defendants' attempt to preempt any scheduling difficulties.

We emphasize the sage words of Justice Roberts in his concurring opinion in *Budget Laundry Co.*:

In joining the opinion of the Court I desire to express my strong disagreement with any rule of court which subordinates the quality of justice to the hazards of arbitrary insistence upon an 'assembly-line' disposition of cases. Such inflexibility neither serves the interests of justice nor advances the proper objectives of effective court administration. As was so eloquently stated by Judge Jerome Frank:

'The law is not a machine and the judges not machine-tenders. There never was and there never will be a body of fixed and predetermined rules alike for all. The acts of human beings are not identical mathematical entities; the individual cannot be eliminated as, in algebraic equations, equal quantities on the two sides can be cancelled. Life rebels against all efforts at legal over-simplification.... To do justice, to make any legal sys-

tem acceptable to society, the abstract preestablished rules have to be adapted and adjusted, the static formulas made alive.'

*Budget Laundry Co.*, 450 Pa. at 24, 298 A.2d at 59–60 (quoting Jerome Frank, Law and the Modern Mind, 120) (Roberts, J., concurring).

■ While we acknowledge the Trial Court's interests in exercising its discretion to control its calendar, we note that it is axiomatic that a reviewing court may interfere therewith to address issues regarding the exercise of that discretion when justice demands. *Dublin Sportswear v. Charlett*, 485 Pa. 633, 403 A.2d 568 (1979). In this matter, we fail to see how the Trial Court's interest in concluding the trial in order to accelerate its scheduled address of a purported "200 matters in Discovery Court" during three hours in the afternoon in question, at the expense of allowing Defendants' sole damages witness in this matter to appear in the same afternoon, represents a proper exercise of the Trial Court's discretion in adhering to its calendar. The acceleration of 200 discovery matters into the final three hours of the original schedule for the trial at hand cannot be seen as outweighing the interests of justice inherent in providing an opportunity for Defendants to present a potentially relevant, non-duplicative, material witness. As such, we find the Trial Court's failure to grant the brief continuance of several hours to the Defendants in this matter to be an abuse of discretion.

■ Next, Defendants argue that they are entitled to a new trial due to the Trial Court's failure to charge the jury regarding the duty of a pedestrian in a crosswalk. The charge requested by Defendants read:

34. Duty of Pedestrians

Defendant ZONG LIANG ZOU was bound to see that which must have been

plainly visible at the time it became his duty to look. Therefore, if he failed to look before crossing the street he was negligent and if he looked, he must have seen defendant's moving vehicle and in stepping in front of it or into it was equally negligent.

*Sweigert v. Mazer,* 410 Pa. 71, 188 A.2d 472 (1963).

Therefore, upon the law and the evidence submitted in this case, you are directed by the Court to enter a finding of negligence against defendant Zong Liang Zou.

R.R. at 98a. In support of this argument, Defendants cite to *Matthews v. Derencin,* 360 Pa. 349, 62 A.2d 6 (1948), *Auel v. White,* 389 Pa. 208, 132 A.2d 350 (1957), and *Sollinger v. Himchak,* 402 Pa. 232, 166 A.2d 531 (1961).

We first note that all of the precedents relied upon by Defendants are factually distinguishable from the instant matter to an extent that renders them inapplicable, and unpersuasive. *Sweigert* and *Auel* involved pedestrians that were crossing streets at a place other than a marked, traffic-signal-controlled designated pedestrian crossing, a significant factual distinction from the facts in the instant matter. If a pedestrian crosses a street at a location other than a regular marked crossing, "he is bound to exercise a higher degree of care for his own safety than would be the case were he crossing at an intersection." *Auel,* 389 Pa. at 213, 132 A.2d at 353. *Matthews* and *Sollinger* did not involve pedestrians, and hence did not involve any pedestrian duty, but instead addressed multiple vehicle automobile accidents.

Secondly, the instruction proposed by Defendants is premised upon, and indeed directs, a factual finding that "Zou was bound to see that which must have been plainly visible at the time it was his duty to look." This can only be read to impliedly direct the jury to find that Zou saw the mini-bus before it struck Cheng. Notwithstanding the fact that this de facto finding usurps the jury's role as factfinder in the matter presented before it, no such evidence exists in the record. The sole testimony of record, from Zou himself, indicates that he did not see the mini-bus before it struck Cheng. R.R. at 188a.

Finally, in addressing *Sweigert* our Supreme Court has stated:

We have said again and again that contributory negligence should not be declared as a matter of law except in a very clear case and only where the evidence thereof is so clear and palpable that there is no room for fair and reasonable men to differ in their conclusions as to its existence, *Sweigert v. Mazer,* 410 Pa. 71, 188 A.2d 472 (1963). This is not such a case. The issue was clearly a jury question.

*Gillingham v. Patz,* 429 Pa. 308, 312, 239 A.2d 287, 288 (1968). Given Zou's testimony in this case, and the evidence as a whole, neither the proposed directed factual finding nor the proposed directed negligence finding were appropriate in this matter. The evidence of both is not so clear that there is no room for reasonable men or women to differ in their conclusions thereon, and as such, both proposed directed findings within the proposed instruction were questions for the jury. *Id.* As such, the Trial Court did not err in refusing the requested jury charge.

■ Next, Defendants argue that the Trial Court abused its discretion in precluding the video deposition of independent witness Shirley Harris. Defendants identified Harris as a witness that would testify via video tape, and Cheng objected on the grounds that the testimony was unclear and contradictory due to Harris' cerebral palsy, and that certain transla-

tions of Harris' answers by her family members, who assisted at the deposition with the agreement of all counsel, were inaccurate. Shortly before Defendants presented their case in chief, the Trial Court addressed the admissibility of Harris' testimony, determining that upon review of the transcript and videotaped deposition, some portions may be lucid and clear. The Trial Court then requested that counsel come to an agreement on which portions were lucid and clear; when the parties could not so agree, the Trial Court reconsidered the evidence and precluded the entire testimony. R.R. at 173a–174a. Subsequently, Defendants considered calling Harris as a live witness, but ultimately chose not to do so. R.R. at 216a, 219a.

In support of their allegation of error, Defendants rely upon the Superior Court precedent in *Quinby v. Burmeister*, 850 A.2d 667 (Pa.Super.2004).[6] In *Quinby*, Superior Court held that the exclusion of videotaped testimony from a decedent party who was a quadriplegic, on the basis that it may engender sympathy for the deceased witness/party, was an abuse of discretion; only the prejudicial portions of the video testimony should have been excluded, in order to allow the jury to assess the decedent's credibility. Defendants argue that although Harris, in this matter, was not a party, the jury herein should have been allowed to view the deposition because Harris was an independent eyewitness in a disputed liability case, and her testimony went directly to the cause of the accident. Defendants argue that the Trial Court erred and abused its discretion, severely prejudicing Defendants by failing to admit either the entire video deposition or the portions thereof found by the Trial

Court to be clear and lucid. We find *Quinby* unpersuasive to the facts of this case.

In *Quinby*, the Supreme Court found an abuse of discretion where the evidence was found inadmissible based upon the sympathy that may have been engendered due to that witness's disabled condition. However, in this matter the Trial Court found that Harris's testimony was inadmissible on the grounds that the witness's own testimony, where it was clear in the first person, was unreliable, self-conflicting, and contradictory. R.R. at 173a. Further, and not insignificantly, the Trial Court found that the witness's mother and sister were unreliable in their roles as interpreters, adding more to short answers provided by the witness herself, and appearing to give their own opinions of the witness's answers when those answers were indiscernible. *Id.*

The admission and/or exclusion of evidence are matters within the sound discretion of the trial court, and will not be disturbed on appeal absent a clear indication that its discretion has been abused. *Henry v. McCrudden*, 133 Pa.Cmwlth. 231, 575 A.2d 666, *petition for allowance of appeal denied*, 526 Pa. 651, 585 A.2d 470 (1990). Given the multiple indicia of unreliability of both Harris's own discernable testimony, and that of her family members acting as interpreters, the Trial Court in this matter did not abuse its discretion in excluding the deposition testimony at issue. *Henry.*

■ Finally, Defendants argue that the Trial Court erred in refusing their Post Trial Motion in that Defendants are entitled to JNOV because the verdict was contrary to the weight of the evidence

---

6. *Affirmed in part, reversed in part, Quinby v. Plumsteadville Family Practice, Inc.*, 589 Pa. 183, 907 A.2d 1061 (2006).

supporting negligence on Defendants' part. Defendants argue that the testimony on liability in this matter—namely, the testimony of Rodriguez, and the testimony of Zou—establish that Rodriguez did not breach a duty of care owed to Zou, and that thusly, Cheng was unable to meet the burden of even a *prima facie* showing of negligence in this matter.[7]   In support of their arguments, Defendants emphasize selected testimony in their favor as presented by the van's driver, Rodriguez, and by the child's grandfather and co-defendant, Zou. Defendants' argument on this issue is limited to its assertion that Rodriguez did not breach a duty of care owed to Cheng.   Our review of the testimony as a whole reveals the opposite; Cheng met her burden of showing that Rodriguez breached the duty of care owed to Cheng.

Rodriguez's own testimony establishes the following facts:   Rodriguez was stopped at an intersection stop sign two to three blocks away from four separate schools at 3pm during a school day at approximately dismissal time;   Rodriguez saw Cheng at the pedestrian crosswalk in the direction Rodriguez was about to turn, and Rodriguez knew that Cheng was preparing to cross;   Rodriguez made no at-tempt to communicate a warning signal, either visually or aurally, with Cheng; Rodriguez was aware of the existence and size of the blind spot that accompanied the operation of the van that he was driving such that he would not be able to see a child of Cheng's height once he began his turn;   Rodriguez's turn into the pedestrian crosswalk was sharp enough that his van ended up crossing over into the wrong lane.   R.R. at 118a, 121a–124a, 148a–150a, 152a, 159a.

This Court's review of a trial court's denial of a motion for JNOV is well established:

> An appellate court's scope of review with respect to whether JNOV was appropriate is plenary, as with any review of questions of law ... The proper appellate standard of review when examining a lower court's refusal to grant JNOV "is whether, when reading the evidence in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict."   ... "Questions of credibility and conflicts in the evidence are for the trial court to resolve and the review-

---

7.  In its opinion accompanying the matter *sub judice*, the Trial Court correctly noted:

> In order to prove negligence, [Cheng] was required to prove duty, breach, a causal relationship between the breach and the resulting injury, and an actual loss.   *Burman v. Golay & Co., Inc.*, 420 Pa.Super. 209, 616 A.2d 657 (1992)[, *petition for allowance of appeal denied*, 533 Pa. 648, 624 A.2d 108 (1993)]; *Casey v. Geiger*, 346 Pa.Super. 279, 499 A.2d 606 (1985)[, *petition for allowance of appeal denied*, 516 Pa. 638, 533 A.2d 710 (1987)].   When considering the question of duty, it is necessary to determine "whether a defendant is under any obligation for the benefit of the particular plaintiff ... and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no

cause of action based upon negligence."   *Hoffman v. Sun Pipe Line, Co.*, 394 Pa.Super. 109, 575 A.2d 122, 125 (1990).   Duty, in any given situation, is predicated upon the relationship existing between the parties at the relevant time. *Zanine v. Gallagher*, 345 Pa.Super. 119, 497 A.2d 1332, 1334 (1985), [*petition for allowance of appeal denied* (1986)].   Where the parties are strangers to each other, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions.   *Id.* The scope of this duty is limited, however, to those risks which are reasonably foreseeable by the actor in the circumstances of the case.   See *J.E.J. v. Tri–County Big Brothers/Big Sisters, Inc.*, 692 A.2d 582 (Pa.Super.1997).

Tr. Ct. Op. at 6.

ing court should not reweigh the evidence."

*Gehres v. Falls Township*, 948 A.2d 249, 251 (Pa.Cmwlth.2008) (additional citation omitted).

The above-cited testimony by Rodriguez, as well as the evidence as a whole in this matter, including the testimony of Zou, constitutes sufficient competent evidence to sustain Cheng's burden in this matter. *Gehres*. Notwithstanding Defendants' citation to selected portions of the testimony that support Defendants' preferred version of the facts, the testimony cited and as a whole, when read in a light most favorable to Cheng and with all favorable inferences therefrom granted to Cheng, renders Defendants' argument on this issue without merit.

Accordingly, we reverse the Trial Court's denial of Defendants' Post Trial Motion in part, and remand this matter for a new trial limited to the issue of damages[8] in accordance with the foregoing opinion.

### ORDER

AND NOW, this 6th day of August, 2009, the order of the Court of Common Pleas of Philadelphia County dated October 11, 2007, is reversed in part, and the matter remanded for a new trial limited to the issue of damages, in accordance with the foregoing opinion.

Jurisdiction relinquished.

---

8. *See, e.g., Aiello v. Southeastern Pennsylvania Transportation Authority*, 687 A.2d 399 (Pa. Cmwlth.1996) (where appealed issues of liability are found meritless and that portion of trial court order is affirmed, but error is present in regards to damages, remand may be ordered as limited to the issue of damages).