IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamar Advantage GP Company,    :
LLC    :
    :
            v.    : No. 253 C.D. 2018
    : Argued: February 14, 2019
City of Pittsburgh Zoning Board    :
of Adjustment and City of Pittsburgh,    :
    :
           Appellants    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED: August 29, 2019

The City of Pittsburgh Zoning Board of Adjustment (ZBA) and the City of Pittsburgh (together, the City), appeal from the January 24, 2018 order of the Court of Common Pleas of Allegheny County (trial court), which reversed the February 16, 2017 order of the ZBA denying the protest appeal from a Notice of Violation filed by Lamar Advantage GP Company, LLC (Lamar). The Notice of Violation, issued by the Department of Permits, Licenses and Inspections (PLI) on June 13, 2016, stated that Lamar was in violation of City of Pittsburgh Ordinance (Ordinance) Sections 921.03.F.2 and 919.01.J. Reproduced Record (R.R.) at 160a. The ZBA denied the protest appeal based on its determinations that: Lamar's installation of a static vinyl sign over the face of an existing nonconforming sign violated Ordinance Section 921.03.F.2; Lamar unlawfully failed to remove the sign as required by Ordinance Section 919.01.J; Lamar abandoned its nonconforming

use; and Lamar's installation of the static vinyl sign required a permit. On appeal, the trial court concluded that the ZBA's determinations were not supported by the record.[1] We affirm.

## Background

Lamar owns property (Subject Property) on Grandview Avenue (Mt. Washington) in the City of Pittsburgh. The Subject Property contains two nonconforming signs, one facing Grandview Avenue and the other facing downtown Pittsburgh. The first sign is not at issue. The second sign (Sign) measures 32 feet by 225 feet (7,200 square feet). It was constructed in the 1920s, and ZBA decisions dated 1928 and 1933 reflect its longstanding use for electronic advertising. In 1985, the City issued a certificate of occupancy confirming the Sign's nonconforming use status.[2] R.R. at 41a. The City has annually issued a permit for the Sign and has accepted Lamar's payment of a sign permit fee through 2018.

"In the course of its history, the Sign was used for different corporate messaging, making use of the changeable message board and logo parts of the electronic messaging." ZBA's Findings of Fact (F.F.) No. 10. "The Sign was used consistently for the electronic advertising of businesses, commodities, services, or entertainments conducted, sold, or offered on sites other than the

---

[1] The trial court also concluded that the ZBA exceeded its authority by raising issues concerning abandonment of a nonconforming use, structural alteration of the sign, and change of type of advertising sign, which were not identified in the Notice of Violation.

[2] The 1985 occupancy permit for the Subject Property permitted "Two ground signs. One at 12' x 25' and one at 32' x 225'. Issued on the basis of sign registration billing #5253 renewed annually prior to 1958. Original application destroyed." ZBA's Finding of Fact No. 9.

2

Subject Property, as well as for community messaging and the time." *Id.* The Sign was recently used for the logo of Bayer Corporation, advertising for Bayer, community messages (including a science quiz), and the time. The Bayer signage made use of approximately 20 feet by 225 feet, or 4,500 square feet, on the larger structure. F.F. No. 11. Bayer's use of the Sign ended in early 2014, after which the Sign displayed only public service messaging, using 4,500 square feet in area. F.F. Nos. 12, 13.

In 2012, Lamar began discussing plans to modernize the Sign with the City and community groups. In June 2014, Lamar filed an application (Application) with the City for approval to modernize the Sign by renovating the sign face, replacing the electronics, and repairing the structure. R.R. at 169a-71a. The record includes correspondence emails between counsel for Lamar and Corey Layman, the City's Zoning Administrator, documenting the ongoing application process. On July 25, 2014, Layman responded to an inquiry from Lamar stating that preliminary determinations made by himself and the City's Law Department were "consistent with your application narrative." R.R. at 215a. Layman advised Lamar to submit a check in an amount calculated at $10.00 per square foot, specifications for the product to be used, and an elevation drawing of the sign face. Lamar responded by hand-delivered letter dated July 31, 2014, accompanied by documentation and a check for $72,000.00 as payment of the application fee. R.R. at 217a-26a.

A subsequent letter from Lamar dated September 12, 2014, provided additional information, indicating that: there would be no change to the number, size, or spacing of characters; the size of the Sign (32 feet by 275 feet) will not change; and the Sign will be operated in a similar manner to the existing sign in

3

terms of messaging and content. R.R. at 227a-28a. The letter also conveyed Lamar's understanding that the "Application [was] now complete." *Id.* A subsequent letter of November 17, 2014, states that Lamar had agreed to conditions regarding the duration of the lease, charitable and civic content,[3] and landscaping and corridor enhancements. R.R. at 230a-31a. To date, the City has not acted on the Application, and the pending Application is not at issue in this appeal. F.F. Nos. 15-18.

In the spring of 2015, the City's mayor and other City officials began publicly stating that the Application would not be approved until the City specifically approved the content to be placed on the Sign.[4] In early 2016, PLI inspected the Sign and began issuing citations under both the City's zoning code and building code related to the Sign's deteriorating condition.[5] On February 2, 2016, PLI issued a notice of violation regarding the Subject Property for violation of Section 304.2 of the Ordinance, which requires that all "exterior surfaces shall be maintained in good condition [and] shall be protected from the elements and decay by painting or other protective covering or treatment to prevent rust or corrosion on sign." *See* R.R. at 261a-62a.

In response, Lamar first painted the rear of the Sign's structure. *Id.* Shortly thereafter, in the spring of 2016, the Bayer logo portion of the Sign ceased

---

[3] "We have spoken with the new advertiser and they have agreed to make space available to their charitable and civic partners on a 'space available' basis. Please note that this decision is solely the decision of the advertiser, and all of the content on the billboard, both commercial and charitable, will be controlled by the advertiser." R.R. at 230a.

[4] *See, e.g.*, "CBS article," May 22, 2015, R.R. at 279a.

[5] Citations under the building code were withdrawn or dismissed by a magisterial district judge.

4

operation. On May 31, 2016, while approval of the Application was still pending and citations were being issued concerning the condition of the Sign, Lamar placed a vinyl sign on top of the Sign's existing message and neon letters "to protect the structure and to continue its operation of the [Sign] for advertising purposes." Lamar's brief at 8. The vinyl sign displayed a black and yellow advertisement for Sprint.

**Notices of Violation**

On June 13, 2016, PLI issued a Notice of Violation, stating that Lamar was in violation of Ordinance Section 921.03.F.2, and Ordinance Section 919.01.J.[6] R.R. at 160a. In relevant part, Ordinance Section 921.03.F.2 states:

> Nonconforming signs shall be subject to the noncomplying structure regulations of this section, as modified by the following:
>
> Nonconforming signs may not be enlarged, added to or replaced by another nonconforming sign or by a nonconforming use or structure, except that the substitution or interchange of poster panels and painted boards on nonconforming signs shall be permitted

R.R. at 437a. On July 12, 2016, Lamar filed a protest appeal.[7] The ZBA held a hearing on the protest appeal on November 10, 2016.

---

[6] Section 919.01.J of the Ordinance requires removal of signs within 30 days from the date a business is terminated. The City does not address this Ordinance provision in its appellate brief, and Lamar argues that this issue is waived. We agree. *See Jackson v. Indiana University of Pennsylvania*, 695 A.2d 980, 983 (Pa. Cmwlth. 1997) (an issue is waived if it is not addressed in the appellant's brief).

[7] The City filed a separate criminal complaint against Lamar on June 27, 2016, asserting the same violations as in the June 13, 2016 Notice of Violation. Proceedings were continued awaiting the ZBA's decision.

**The ZBA Hearing**

PLI senior inspector Kevin Karman testified that he photographed and inspected the Subject Property on May 13, 2016, from a vantage point on West Carson Street, approximately 500 feet below the Sign. He stated that he could not see the structure or measure it, but he could observe that the vinyl Sprint advertisement covered the "Bayer" sign.

Karman acknowledged that he did not review any relevant records concerning the Subject Property and that he was not familiar with the relevant Ordinance provisions. Karman said that Erik Harless, assistant director of PLI, and Corey Layman, the City's Zoning Administrator, determined what Ordinance sections were violated and told him what to put on the Notice of Violation. Karman said he believed that Lamar violated Section 921.03.F.2 of the Ordinance (concerning enlarging or replacing a nonconforming sign) by placing the Sprint advertisement on top of the Bayer sign. He could not say how Lamar was in violation of Ordinance Section 919.01.J.

Zoning Administrator Layman testified that he and Harless determined the specific provisions of the Ordinance that were violated by Lamar's placement of the vinyl covering over the prior Bayer signage. R.R. at 89a. Layman believed that Ordinance Section 919.01.J was violated because the Bayer sign messaging had ceased more than 30 days before the Sign was covered by the vinyl advertisement. R.R. at 93a.

Additionally, according to Layman, the "increase in the size of the advertising" on the face of the nonconforming sign meant that a permit for a new sign was required. R.R. at 96a. He clarified that while the structure itself was not

6

enlarged, the "size of the nonconformity was changed" because the advertising copy on the structure was larger than the prior advertising copy. *Id.*

Layman explained that over time, the area of the Sign used for advertising was reduced to 4,500 square feet, and the percentage of time devoted to commercial advertising was reduced to approximately 10 percent. He stated: "Voluntarily, the level of nonconformity was reduced to a size that is much smaller than the entire face of the sign and to a [shorter] duration of advertising content." R.R. at 104a-105a. He testified that the voluntary reduction in size and subsequent increase of the nonconformity referred to the size of the *advertising message*, not "the size of the signage itself."[8] R.R. at 116a.

---

[8] Layman stated that, "[the City] didn't want to see an application that increased the nonconformity of the sign . . . ." R.R. at 116a. He explained that the City's concerns regarding an increase to the Sign's nonconformity referred "to the size of the advertising message, not the sign itself." *Id.* He added that for the Application to be considered complete, the City would need "architectural submissions . . . as well as that those submissions were not increasing the advertising size of the sign." R.R. at 127a-28a.

Counsel for Lamar asked Layman:

> If I have a billboard that I have a sign up, and that sign says UPMC on it, and there is a white background beside UPMC, and it only says UPMC on it, your position is that my advertising medium, all that is permitted is where the U, the P, the M and the C are, correct, and that the background doesn't mean anything?

R.R. at 117a. Layman responded:

> I think you're oversimplifying it. That is not my testimony. . . . I can say this is an exceptional sign. It is not a standard advertising billboard. It is visible to vast amounts of the City. It has a history and occupancy permits that are clear about the advertising nature of it. It has been -- it is an exceptional structure and sign. I would not try to make a comparison between that and a typical billboard where you change out a vinyl panel. This is an electronic sign that

**(Footnote continued on next page…)**

7

Jim Vlasach, Lamar's real estate manager, testified that, for the period of years that the Application was pending, the Sign remained in operation and the entire Sign was used. R.R. at 132a-33a. Its messaging included the time and public service messages. Vlasach testified that the Sign was used continually up to the time the vinyl Sprint ad was installed. Vlasach also testified that while the Application was pending, Lamar had discussions with another advertiser about leasing the Sign, but the advertiser changed its mind due to concerns about the City's requests to limit the Sign's content. R.R. at 141a.

Vlasach said that the vinyl Sprint advertisement measures 32 feet by 225 feet, the same size as the Sign face. He said that no structural alterations were made when the vinyl was installed and there were no physical changes, other than ratcheting the vinyl onto the Sign face. He noted that the Sprint advertisement did not cover the entire face of the Sign. Vlasach also stated that in his 20 years of experience, he was never required to obtain a permit to remove or change a sign under Section 919.01.J, which Lamar contends applies only to on-premises advertising. R.R. at 137a-38a.

**ZBA Decision**

In relevant part, the ZBA found that no evidence was presented to show that the Sign was ever used for static advertising, or that the full 7,200 square

---

**(continued…)**

> had been operated with motion, with changing. It's been clearly a
> substantial nonconforming sign.

R.R. at 118a. Layman acknowledged that there is no special provision in the Ordinance for an "exceptional sign."

8

feet of the Sign was used for advertising. The ZBA noted that the vinyl sign does not use electronic technology and covers the entirety of the Sign. The ZBA concluded that Lamar's installation of a 7,200-square-foot static advertising sign as a replacement for the nonconforming "4,500 [square foot] electronic sign" violated Ordinance Section 921.03.F.2, which provides that nonconforming signs cannot be enlarged, added to or replaced by another nonconforming sign, use, or structure.

The ZBA concluded that the area used for the vinyl sign was a significant enlargement from the 4,500-square-foot area used for the electronic sign message characters of the Sign. Conclusion of Law No. 19.

> The fact that the installation of the Vinyl Sign did not alter the size of the Sign Structure is not relevant and does not alter the fact that *the installation of the Vinyl Sign increased the area of Sign Structure used for signage.* Because poster panels or painted boards were never used on the sign Structure, the Vinyl Sign could not constitute a substitution or interchange for those types of materials. For these reasons, the Vinyl Sign violated Section 921.03.

Conclusion of Law No. 19 (emphasis added).

The ZBA further determined that, "[a]lthough not specifically noted in the Notice of Violation," the installation of the vinyl sign also violated Sections 919.02.N.2 (prohibiting the structural alteration or enlargement of a nonconforming sign) and 919.02.N.6 (prohibiting the replacement of an electronic sign with an advertising sign). Conclusions of Law Nos. 21, 22. Additionally, the ZBA found that Lamar unlawfully failed to remove the Bayer signage after its business relationship with Bayer ended, as required under Ordinance Section 919.01.J. Conclusions of Law Nos. 25-27. Finally, the ZBA concluded that Lamar abandoned the nonconforming use, stating that, by installing the vinyl sign, Lamar

9

abandoned any legally nonconforming use as an electronic advertising sign. Conclusions of Law Nos. 28-34.

In its February 16, 2017 decision, the ZBA denied Lamar's appeal of the Notice of Violation "with specific reference to Section 921.03 [enlarging or replacing a nonconforming sign] and also consistent with Section 919.02.N [related to increasing the area used for signage and replacing an electronic advertising sign with an advertising sign]." Conclusion of Law No. 24.

Lamar appealed the ZBA's decision to the trial court.[9]

**Trial court's decision**[10]

Before the trial court, Lamar asserted, *inter alia*, that the ZBA exceeded its jurisdictional authority by *sua sponte* raising issues, including abandonment of a nonconforming use and change in the type of advertising sign, and applying Ordinance provisions not cited in the Notice of Violation.[11]

---

[9] On April 12, 2017, while Lamar's appeal of the ZBA's decision was pending, Municipal Court Judge James A. Motznik (MCJ Motznik) held a hearing on the criminal complaint. R.R. at 284a-331a. Following the hearing, MCJ Motznik dismissed the criminal charges.

[10] After the City filed the record of the ZBA proceedings, Lamar filed a Supplemental Return to include the transcript of the April 12, 2017 hearing into evidence. Over the City's objections, the trial court allowed the Supplemental Return, but the trial court did not refer to it in its opinion.

[11] Lamar also asserted that the ZBA exceeded its authority and violated Lamar's constitutional rights to free speech and due process of law by, *inter alia*, *sua sponte* finding violations under Ordinance Section 919.02.N.2 (concerning the enlargement of the area of the sign and increasing the nonconformity); Ordinance Section 919.02.N.6 (change in use); and Ordinance Section 921.02.B.2 (abandonment). "It is well settled that a court should not decide a constitutional question if the case can be decided on non-constitutional grounds." *Friedlander v. Zoning Hearing Board of Sayre Borough*, 546 A.2d 755, 758 (Pa. Cmwlth. 1988). The trial **(Footnote continued on next page…)**

10

The trial court concluded that the ZBA exceeded its jurisdictional authority by considering issues not identified in the Notice of Violation, specifically, issues concerning abandonment of a nonconforming use and change in the type of advertising sign. The trial court also determined that Lamar did not need a permit to change the advertising copy on the Sign and did not violate Section 921.03.F.2, prohibiting enlargement or replacement of a nonconforming sign. The trial court noted that Layman, the City's Zoning Administrator, had agreed that the size of the Sign structure had not changed with the installation of the vinyl cover. Instead, he testified that the vinyl cover increased the size of the *advertising content*. In its decision, the ZBA concurred, stating, "*the area used for the vinyl sign was . . .* a significant enlargement from *the 4,500 [square foot] area used for the electronic sign message characters*" of the Sign. Conclusion of Law No. 19 (emphasis added). The trial court concluded that the ZBA's determination that the area of the Sign was impermissibly enlarged conflicted with the definition provided in Ordinance Section 919.01.C.16, which states:

> *Area of Sign* means *the entire area* within a single continuous perimeter enclosing the extreme limits or writing, representation, emblem or any figure or similar character together with any frame or other material or color forming an integral part of the display or used to differentiate such sign from the background against which it is placed (excluding the necessary supports or uprights which such sign is placed or apron designed to cover such uprights or work board installed to provide a safe area for servicing such sign).

R.R. at 437a-38a (emphasis added).

---

**(continued…)**

court did not address Lamar's constitutional arguments, and we need not decide them in this appeal.

11

The trial court further held that the ZBA erred in concluding that Lamar abandoned its nonconforming use of the Sign. The trial court noted that a determination of abandonment must be established by evidence of intent to abandon and actual abandonment,[12] whereas the record shows that Lamar was actively pursuing approval to modernize the Sign and the Sign was continuously used for advertising purposes. Accordingly, the trial court reversed the ZBA's decision.

## Discussion[13]

On appeal, citing *Marshall v. City of Philadelphia*, 97 A.3d 323 (Pa. 2014), and *Nettleton v. Zoning Board of Adjustment of the City of Pittsburgh*, 828 A.2d 1033 (Pa. 2003), the City first asserts that the ZBA's credibility determinations should be given great weight, and the City contends that the trial court erred in substituting its credibility determinations for those of the ZBA. We disagree.

Significantly, while the ZBA expressly found Layman's testimony credible, his factual assertions are not in dispute. Where his credible testimony concerns his interpretation of the Ordinance, those legal conclusions are not binding on appeal. Rather, an appellate court's scope of review of questions of law is plenary. *Smith v. Hanover Zoning Hearing Board*, 78 A.3d 1212, 1218 (Pa.

---

[12] *Latrobe Speedway, Inc. v. Zoning Hearing Board of Unity Township, Westmoreland County*, 720 A.2d 127, 132 (Pa. 1998).

[13] Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the ZBA abused its discretion or committed an error of law. *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 831 A.2d 764, 768 n.5 (Pa. Cmwlth. 2003). The ZBA abuses its discretion only if its findings are not supported by substantial evidence. *Id.*

12

Cmwlth. 2013); *Cheng v. SEPTA*, 981 A.2d 371, 382 (Pa. Cmwlth. 2009). Similarly, although the ZBA rejected Vlasach's testimony that the use of the entire 7,200 square feet of the Sign did not constitute an enlargement of the Sign, this is a legal determination, not a factual issue.

We discern no merit to the City's contention that the trial court erred in substituting its credibility determinations for those of the ZBA. Indeed, there is little dispute about any of the relevant facts in this case. Rather, the issues involve the interpretation and proper application of the Ordinance provisions. Unlike credibility determinations, the ZBA's legal conclusions are not binding on appeal. *Smith*, 78 A.3d at 1218.

Next, the City argues that the ZBA properly found that a change in the use of the Sign, from advertising to nonadvertising, had occurred.[14] The City notes that after display of the Bayer logo ceased, the Sign was used only for messaging time and public service information. According to the City, the Sign had become a nonadvertising sign as of the May 2016 inspection. Presuming that the Sign had lost its characterization as an electronic advertising sign, the City argues that the electronic *nonadvertising* sign was then replaced with a larger, static *advertising* sign, which then required Lamar to obtain zoning approval. The City argues that once the ZBA found that the vinyl sign was a nonelectronic advertising sign, a new and different use, it properly concluded that Lamar was required to obtain a new certificate of occupancy.

---

[14] Specifically, the City maintains that as of May 2016, the Sign no longer fell within the definition of an *advertising* sign under Ordinance Section 919.01.C.2, because it did not depict a logo or reference a business, commodity, service, or entertainment.

13

The City cites no authority to support the proposition that a temporary interruption in the use of the Sign for advertising is sufficient, alone, to effectuate a change in the use of the Sign from advertising to nonadvertising. Moreover, in arguing that the use of the Sign to display time and public service messages changed its use to nonadvertising, the City disregards the pending Application and the City's failure to formally act upon it. More important, the City fails to explain how any interruption of commercial advertising, no matter how brief, results in a change of zoning use as a matter of law.[15] We reject the City's implied contention that a nonconforming use can be changed from advertising to nonadvertising based solely on a period of inactivity between commercial leases.

The City next argues that it properly considered the measurements of the Sign face as most recently used, or 4,500 square feet, separately from the dimensions of the Sign structure, 7,200 square feet, as reflected on the certificate of occupancy. The City argues that its distinction is consistent with the Ordinance's current definitions of "areas of the sign" and "sign face."[16] However, the ZBA specifically found that the size of the *advertising content* on the Sign was increased; no evidence presented suggests that the sign face or the structure as a whole was enlarged.[17]

---

[15] The City presents this change of use as a separate issue from the question of abandonment.

[16] Ordinance Section 919.01.C defines "Face of Sign" to mean "the side or sides of a sign on which the letterhead, pictorial or sculpted matter designed to convey information is to be placed."

[17] Lamar contends that the vinyl advertising is ratcheted on top of the existing structure and is permitted under Ordinance Section 921.03.F as an "interchange of poster panels." Although this is a questionable conclusion, Lamar correctly notes that none of the electronic or **(Footnote continued on next page…)**

14

The City further argues that the installation of the vinyl sign resulted in Lamar's abandonment of the nonconforming use. Specifically, and again presuming that the advertising use was changed to a non-advertising use once the paid commercial content ceased, the City contends that the subsequent installation of the 7,200-square-foot vinyl, nonelectronic advertising sign is qualitatively different from the prior use as a 4,500-square-foot electronic nonadvertising sign.

However, the City acknowledges that to prove abandonment, both actual abandonment and an intent to abandon the nonconforming use must be established. *Latrobe Speedway, Inc. v. Zoning Hearing Board of Unity Township*, 720 A.2d 127, 132 (Pa. 1998). Actual abandonment cannot be inferred from non-use alone. *Metzger v. Bensalem Township Zoning Hearing Board*, 645 A.2d 369, 370 (Pa. Cmwlth. 1994). Where discontinuance of a use occurs due to events beyond the owner's control, there is no actual abandonment. *Id.* Removal or alteration of structures or equipment designed for a specific use is the most definitive evidence of actual abandonment of that use. *Id.* at 371.

Whether the attachment of the vinyl advertisement over the electronic Sign constitutes evidence of actual abandonment, the City presented no evidence that Lamar intended to abandon the use. To the contrary, the evidence demonstrates that Lamar always intended to continue its nonconforming use of the Sign as an electronic advertising sign. Consequently, this argument also fails.

Finally, the City argues that even though the trial court did not address whether the dismissal of the criminal complaint collaterally estopped the City from

---

**(continued…)**

mechanical components of the Sign were removed and the square footage of the advertisement was not increased.

proceeding with the appeal, it should not have permitted Lamar to introduce the transcript, where the trial court did not determine that the record before it was otherwise incomplete or hold a *de novo* hearing. We need not resolve these arguments, however, because regardless of the applicable legal standard, the testimony in the separate proceeding was virtually identical to that presented before the ZBA. Moreover, any purported error in this regard is harmless as there is no indication that the transcript was relied upon, or considered by the trial court.

### Conclusion

The relevant facts are both unique and undisputed. After careful review, we agree with the trial court that the record does not support the ZBA's legal conclusions that Lamar reduced the area of the Sign or that the area of the Sign was subsequently increased from 4,500 square feet to 7,200 square feet with placement of the vinyl sign cover, thereby violating Ordinance Section 919.02.N.2 (prohibiting enlargement of a nonconforming sign). Likewise, the facts do not support the ZBA's legal conclusions that Lamar changed the use of the Sign from advertising to non-advertising by displaying time and public service messages after Bayer's advertising ceased, or that the subsequent attachment of the vinyl sign cover converted the use of the Sign from electronic non-advertising to advertising, in violation of Ordinance Section 919.02.N.6. The trial court properly concluded that Lamar did not violate Ordinance Section 921.03.F.2 (providing that nonconforming signs cannot be enlarged, added to or replaced by another nonconforming sign) and properly reversed the ZBA's decision.

16

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamar Advantage GP Company,   :
LLC   :
  :
  :
v.   : No. 253 C.D. 2018
  :
City of Pittsburgh Zoning Board   :
of Adjustment and City of Pittsburgh,   :
  :
Appellants   :


# O R D E R


AND NOW, this 29th day of August, 2019, the order of the Court of Common Pleas of Allegheny County is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge